J.G., by his mother and next friend MRS. G.; M.W., by her mother and next friend, Mrs. W.; A.M., by his mother and next friend, Mrs. M., and K.M., by her mother and next friend, Mrs. M.; on behalf of themselves and all persons similarly situated, Plaintiffs,

v.

The BOARD OF EDUCATION OF the ROCHESTER CITY SCHOOL DISTRICT; John Delvecchio; Archie Curry; Frank Willis; Irene Frusci; Josephine Genovese; Karen Grella, and Gary Smith, individually and in their official capacities as members of the Board of Education of the Rochester City School District; Laval M. Wilson, in his official capacity as Superintendent of the Rochester City Schools; Bernard S. Greenberger, individually and in his official capacity as Director of the Department of Special Education of the Rochester City Schools; Robert Lays, individually and in his official capacity as Assistant Director of the Department of Special Education of the Rochester City Schools; Joseph Salemi, individually and in his official capacity as Assistant Director of the Department of Special Education of the Rochester City Schools; the New York State Department of Education; and Gordon M. Ambach, in his official capacity as Commissioner of the New York State Education Department, Defendants.

No. CIV–81–173T.

United States District Court, W.D. New York.

Dec. 3, 1986.

Rochester City School District in March of 1981. The Board of Education for the City Schools, the State Department of Education and Gordon Ambach, its Commissioner, were named as defendants. Plaintiffs allege that handicapped children were being denied appropriate public education designed to meet their special needs and sought relief under Education of All Handicapped Children Act, 20 U.S.C. § 1401, *et seq.*, The Rehabilitation Act of 1973, 29 U.S.C. § 794, and Civil Rights Act of 1871, 42 U.S.C. § 1983. The merits of the case were resolved in a consent degree entered into between the plaintiffs and the defendant Board of Education on August 11, 1983. In March of 1986, plaintiffs moved to dismiss without prejudice their complaint against the defendants New York State Department of Education and Gordon Ambach, its Commissioner and for attorneys' fees pursuant to 42 U.S.C. § 1988. In an order dated July 8, 1986, I granted the motion to dismiss without prejudice but denied the motion for attorneys' fees. The denial was based on the fact that the consent degree represented relief under Education for the Handicapped Act ("EHA"), which did not provide for attorneys' fees, and was not based on the § 1983 cause of action. Plaintiffs filed an appeal of that decision.

Before the appeal was heard President Reagan signed into law the Handicapped Children Protection Act of 1986, Public Law 99–372, which provides for attorneys' fees in EHA cases. The parties then stipulated to withdraw the appeal and moved for reconsideration of the attorneys' fees issue in light of the new law.

Greater Upstate Law Project (Elizabeth L. Schneider, of counsel), Monroe County Legal Assistance Corporation (Bryan D. Hetherington, of counsel), Rochester, N.Y. Western New York Protection & Advocacy Office for the Development of Mentally Disabled Neighborhood Legal Services, Inc. (David A. Munro, of counsel), Buffalo, N.Y., for plaintiffs.

Rochester City School District (Adam Kaufman, of counsel), Rochester, N.Y. and N.Y.S. Dept. of Education (Kenneth Pawson, of counsel), Albany, N.Y., for defendants.

TELESCA, District Judge.

Plaintiffs filed this class action suit on behalf of handicapped students in the

## BACKGROUND

This action was filed in March of 1981 before my predecessor the late Honorable Harold P. Burke. Upon Judge Burke's death, the case was transferred to the Honorable John T. Elfvin. Prior to answering the complaint, the defendants moved to dismiss based, *inter alia*, on the argument that plaintiffs were required, under EHA, to exhaust administrative remedies. In a decision dated March 30, 1982, Judge Elfvin denied the defendants' motion. Judge Elfvin held that 20 U.S.C. § 1415 provides a cause of action not simply for an appeal of a final administrative decision concern-

ing evaluation or placement of a handicapped student but also for seeking relief for system wide violations of the Act. Thus he concluded that the plaintiffs need not have exhausted either federal or State administrative remedies before filing their legal action.

Because it was my feeling that all of the parties in the case had the interest of handicapped children at heart, and because they all desired to work out a system of providing quality education to these deserving children I set in motion the process of working towards a settlement of the dispute. Although the parties were initially far from agreement, over a period of more than a year, and after six status conferences, the parties were finally able to reach an agreement. Meetings were held not only with attorneys but also with those individuals actually involved in the day-to-day implementation of education for the handicapped in the City of Rochester. State Commissioner of Education Gordon Ambach attended some of the status conferences as did Superintendent of Rochester City Schools Dr. Lavall Wilson.

As I stated in my findings of fact and conclusions of law

38. The proposed settlement when taken as a whole represents significant gains for handicapped children and their parents in the Rochester City School District. The provisions achieve the relief sought by the plaintiffs since what they sought were plans to remedy the problems which they alleged have existed in the system. The agreement provides such plans.

The plan is contained in the consent agreement signed by plaintiffs and the defendant Board of Education. The detailed, comprehensive consent agreement contains 71 pages with 34 exhibits in an appendix.

The agreement was detailed enough so as to provide for an operational model for the evaluation and placement of handicapped children, and yet flexible enough so as not to require the parties to return to this Court seeking contempt orders whenever a dispute might arise. The agreement was well received both by public opinion, and by Rochester City officials.[1] As I stated in Court when I accepted the proposed

settlement, [it] "assures a great improvement in the quality of services to be afforded to the handicapped child in Rochester."

The State defendants refused to enter into and sign the consent decree. One of the main basis for their objection was their insistence that plaintiffs' attorneys must first waive any right to attorneys' fees before the State would consider signing the consent agreement.

At the time negotiations toward the consent agreement were taking place, this Court and the attorneys involved were working under the restrictions they understood to be imposed upon them by *Prandini v. National Tea Company*, 557 F.2d 1015, 1021 (3rd Cir.1977) which states that a court should insist on settlement of the damages aspect of a class action suit separately before any discussion of attorneys' fees takes place. *Malchman v. Davis*, 706 F.2d 426 (2d Cir.1983). Based on the constraints placed on the parties by this authority I directed them not to discuss attorneys' fees until after negotiation on the merits were complete. Plaintiffs' attorneys were scrupulous in avoiding any discussion of their fees during the entire lengthy negotiations process ultimately leading to the consent settlement. Indeed the settlement itself reflected the parties' understanding of this issue

9. Because of the ethical considerations involved, the attorneys for the parties are unable to discuss the issue of attorneys' fees and other costs as part of the settlement agreement. The attorneys for the parties acknowledge that these issues remain to be decided.

The six status conferences which I held with the parties supplemented the weekly negotiation sessions that occurred between April of 1982 and March of 1983. Although the State defendants were repeatedly invited and encouraged to attend these negotiation sessions, they chose not to participate until April of 1983 when the broad outlines of the agreement had already been developed by the plaintiffs and local defendants. The State was intransigent in its position that it would not participate in settlement discussions unless the other parties agreed that a settlement would require no modification of any exist-

1. The City Council thereafter voted $3,000,-000.00 to implement the plan.

ing or future regulation propounded by the State Department of Education and that plaintiffs' attorneys agree to waive any right to attorneys' fees against the State defendants. The parties were able to comply with the State's first demand and this was reflected in my findings of fact and conclusions of law which I issued upon acceptance of the consent settlement:

44. Nothing in this consent judgment shall be construed to nullify any present provision of any New York State statute or any regulation of the Commissioner of Education, or any such future provision which is not inconsistent with federal statutory or regulatory provisions governing the education of children with handicapping conditions.

However, based on the ethical constraints, legal authority, and my own instructions plaintiffs were unable to discuss with the State defendants the question of attorneys' fees prior to the settlement on the merits. As a result the State defendants refused to enter into the settlement process and the consent decree was signed only by plaintiffs and local defendants.

After the plan had been implemented and was working in the school system for two school years, plaintiffs returned to this Court seeking dismissal without prejudice of their claims against the State defendants and for attorneys' fees against both the local and State defendants. In a class action suit, even if the class has not been certified, Fed.R.Civ.P. 23(e) requires the District Court to approve dismissal of any action so as to insure that unrepresented potential class members are not prejudiced. *Shelton v. Pargo, Inc.*, 582 F.2d 1298 (4th Cir.1978). In making its arguments, plaintiffs stated that although the State defendants were not parties to the consent decree and further that they had not produced a written plan to improve the monitoring of the local school board, yet there was in fact an improvement in the monitoring and the consent decree had brought the local school board into line with State regulations. Plaintiffs argued that were they to continue to and prevail at trial, they could obtain no more than they already had, that is, "a consent judgment requiring correction of all violations and an increased and a better focused monitoring efforts by the district and State defendants." (Plaintiffs' Memorandum of Law, p. 7.)

In July of 1986, I granted plaintiffs' motion for dismissal without prejudice of their complaint against the State defendants but denied their motion for attorneys' fees. The denial of attorneys' fees was based on *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), which held that where plaintiffs could receive their full relief under the EHA they therefore could not also recover under 42 U.S.C. § 1983. In a settlement which could be interpreted as the plaintiff having been a prevailing party, if the relief which plaintiff obtained was available under EHA then the courts will not allow recovery of attorneys' fees based on § 1983 for "unaddressed constitutional claims." *Smith v. Robinson, supra,* at 3465. In short, the essence of the relief afforded the plaintiffs was pursuant to EHA and not § 1983 and fees therefore could not be awarded pursuant to § 1988.

Plaintiffs filed a timely appeal of the denial of their motion for attorneys' fees pursuant to 42 U.S.C. § 1988. While the appeal was pending Public Law 99–372, Handicapped Children Protections Act, was passed by Congress and became law. That act amends the EHA to explicitly authorize an award of attorneys' fees to the prevailing plaintiffs who obtain relief under the EHA. Based on the enactment of PL 99–372, plaintiffs and defendants stipulated to a withdrawal of plaintiffs' appeal, subject to reinstatement, after this Court's decision of a motion to reconsider the attorneys' fees question in light of PL 99–372.

In opposition to the motion, the local defendants have argued that the EHA, even as amended, requires the plaintiffs to have exhausted administrative remedies before they can be considered a prevailing party eligible for attorneys' fees. The State defendants argue that plaintiffs in this case cannot be considered to have prevailed against the State defendants because the State defendants did not enter into the consent decree and no other form of relief was granted against them.

## DISCUSSION

### A. *Exhaustion of Administrative Remedies*

Congress passed the Education for All Handicapped Children Act of 1975 in

response to what it viewed as the unacceptable situation where

> a majority of handicapped children in the United States "were either totally excluded from the schools or were sitting idly in regular classrooms awaiting the time when they were old enough to drop out."

*Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982). (citations omitted.) The 1975 Act became part of the Education for the Handicapped Act, 20 U.S.C. § 1401 *et seq.* One impetus to the passage of the Act was the fact that two District Court cases had held that the United States Constitution guaranteed handicapped children many of the rights which were eventually articulated in the Act.[2] Regardless of the fact that it recognized that a plaintiff seeking relief under EHA might be raising a claim which could also be filed as a civil rights action under 42 U.S.C. § 1983[3], the Supreme Court held in *Smith v. Robinson, supra,* that a prevailing plaintiff could not recover attorneys' fees pursuant to 42 U.S.C. § 1988 for their unadjudicated constitutional claims if the relief they were granted was available under EHA. EHA at that time did not provide for attorneys' fees. Congress responded to this situation by passing the Handicapped Children Protection Act of 1986. That Act addresses both the question of attorneys' fees and the question of the overlap between the EHA and other laws.

> (B) In any action or proceeding brought under this Section, the Court, in its discretion, may award reasonable attorneys' fees as part of the cost to the parents or guardian of the handicapped child or youth who is the prevailing party.

An additional subsection, (f), was added to 20 U.S.C. § 1415 in order to make clear that the EHA provides an additional remedy to those which had already existed at law,

> Nothing in this Title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, Title V of the Rehabilitation Act of 1973, or other federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (b), (2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this part.

Defendants, focusing on the last clause of new subsection (f), as well as on the general structure of section 1415, argue that plaintiffs can recover attorneys' fees only if they have exhausted their administrative remedies. That contention is without merit. Case law, the legislative history and the law of the case, as established by Judge Elfvin's well-reasoned and thorough opinion of March 30, 1982, make it clear that plaintiffs need not have exhausted their administrative remedies.

When the EHA was first passed, Senator Williams made the following remarks

> Exhaustion of the administrative procedures established under this part should not be required for any individual complainant filing a judicial action in cases where such exhaustion would be futile either as a legal or practical matter.

121 Cong.Rec. 37416 (1975) (quoted in *Smith v. Robinson, supra* at Note 17).

Between the passage of the EHA and the Handicapped Children Protection Act of 1986, the legislators, aware that the question of attorneys' fees had been linked to the question of exhaustion of administrative remedies, defined more precisely the situations in which a plaintiff would not be required to exhaust.

Typically, a parent is required to exhaust administrative remedies where complaints involve the identification, evaluation, educational placement, or the provi-

---

**2.** *See, Mills v. Board of Education of the District of Columbia,* 348 F.Supp. 866 (D.C.1972) and *Pennsylvania Association for Retarded Children v. Commonwealth,* 334 F.Supp. 1257 (E.D.Pa. 1971) and 343 F.Supp. 279 (1972).

**3.** In fact, the Court recognized that the same complaint of a Constitutional violation might conceivably find relief based either on the Constitution itself (*Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619), pursuant to 42 U.S.C. § 1983, or pursuant to the EHA.

sion of a free appropriate public education to their handicapped child. However, there are certain situations in which it is not appropriate to require the use of due process and review procedures set out in § 615 [20 U.S.C. § 1415] (b) and (c) of EHA before filing a lawsuit.

These include complaints that: (1) it would be futile to use the due process procedure (e.g., an agency has failed to provide services specified in the child's individualized educational program (IEP) or an agency has abridged a handicapped child's procedural rights such as the failure to make a child's records available); (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought); and (4) an emergency situation exists ...

House Report No. 99–296, page 7.

Virtually the identical language was used by Senator Simon, a cosponsor of both the 1975 bill and the 1986 bill,

It is important to note that there are certain situations in which it is not appropriate to require the exhaustion of EHA administrative remedies before filing a civil lawsuit. These include complaints that: first, an agency has failed to provide services specified in the child's individualized education program [IEP]; second, an agency has abridged or denied a handicapped child's procedural rights— for example, failure to implement required procedures concerning least restrictive environment or convening of meetings; three [sic], an agency had adopted a policy or pursued a practice of general applicability that is contrary to the law, or where it would otherwise be futile to use the due process procedure— for example, where the hearing officer lacks the authority to grant the relief sought; and four, an emergency situation exists—for example, failure to provide services during the pendency of proceedings, or a complaint concerning summer school placement ...

131 Cong.Rec. S10400–01

As Judge Elfvin noted,

Plaintiffs' allegations, if proven, amount not merely to isolated, individual violations of the EAHCA, § 504 the Rehabilitation and the Education Law but to a failure by the school district to comply with said statutes on an institutional, systemic basis. ... The remedies which plaintiffs hope to procure are broad. They seek to maintain this action on behalf of a class composed of all students in the school district who have been identified as possibly in need of special education ... They request the court to require the school district to develop a satisfactory plan whereby it will comply with the statutes.

Unpublished Opinion CIV–81–173B(E), page 13.

Noting that the EAHCA's legislative history indicates that there are exceptions to the exhaustion requirement, Judge Elfvin held that such an exception was applicable in this case where plaintiffs were not complaining about a substantive educational determination, as is contemplated by the administrative procedure contained in subsections (b)(2) and (c), but rather were complaining about the school district's failure to use the procedures which the statute requires.

Recognition of a cause of action under the EAHCA to enforce compliance with the required procedure is consistent with the underlying statutory purpose. Adjudication of plaintiffs' claims will not involve undue judicial interference in matters committed to the school district discretion or peculiarly within its expertise.

*Id.* at page 15.

Thus, Judge Elfvin concluded that neither the State nor the federal administrative remedies were designed to correct alleged system-wide violation of EAHCA's procedures and that plaintiffs' failure to exhaust such administrative remedies does not prevent them from maintaining this action.

The "law of the case" is not a strict rule always to be followed, but rather a doctrine which directs the court's discretion, pro-

vides for a judicial economy, and makes unnecessary the relitigation of issues that have already been decided. *Arizona v. California,* 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318; *Riley v. MEBA Pension Trust,* 586 F.2d 968 (2d Cir.1978). Particularly in this case, where Judge Elfvin's thorough analysis of the question is confirmed by subsequent congressional enactments, it would be inappropriate to reopen the issue. Judge Elfvin's findings conform almost exactly to the third exception cited in both the House and Senate Reports. To require thousands of class members to go through individual administrative hearings, or to expect the hearing officer in one case to order a system-wide change would be both impractical and futile.

### B. *Prevailing Party*

■ Subsection (B) of the new law provides attorneys' fees to a "prevailing party." The local defendants do not argue that the plaintiff is not a prevailing party. As the details of the consent decree reflect and as I stated in my conclusions of law, *supra,* the plaintiffs achieved far reaching system-wide relief bringing the Rochester City School District into compliance with the EHA requirements. Although the issue has not been litigated with regard to this recently passed provision for attorneys' fees, I conclude that it·is fair to draw the analogy from recovery for attorneys' fees under 42 U.S.C. § 1988 and conclude with the Supreme Court "the fact that [plaintiff] prevailed through a settlement rather than through litigation does not weaken her claim to fees." *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980).

■ My conclusion is different with respect to the defendant State Department of Education and its Commissioner Gordon Ambach. The affidavit of Kenneth Pawson, Esq., attorney for the State defendants, was not received by this Court until the day scheduled for the return of plaintiff's motion to reconsider the question of attorneys' fees. Although it would be within my discretion not to consider this out of time response, *Davison v. Keenan,* 740 F.2d 129, 132 (2d Cir.1984), given that Mr. Pawson was present on the return date and made oral argument, I will consider both his oral argument and the authority cited in his affidavit.

In addition to adopting the exhaustion arguments made by the School District the State defendants also make the argument that as regard to them, plaintiffs are not a prevailing party. They remind the Court that the State Department of Education, and the Commissioner, were not parties to the consent decree. Although they did not object to the filing of the consent decree, these defendants were consistent throughout this litigation in insisting that the resolution to plaintiff's complaint lay with the defendant School District complying with all State Department of Education regulations regarding placement of handicapped students. In addition, and what makes this case different from those cited by the plaintiff, is the fact that the plaintiff moved and I granted dismissal of the action, albeit without prejudice, as against the State defendants. Based on these facts, I conclude that plaintiffs are not "prevailing parties" with regard to the State defendants. Plaintiffs' motion for attorneys fees as regard the State Department of Education and Commissioner Gordon Ambach is denied.

### C. *Prevailing Rate*

■ Having concluded that plaintiffs are the prevailing party entitled to attorneys' fees against the defendant Board of Education, I now turn to the question of what is an appropriate fee. Handicapped Children's Protection Act provides in subsection (C)

> For the purpose of this subsection, fee awards under this subsection shall be based on rates prevailing in the community in which the action or proceeding arose in the kind and quality of services furnished. ...

Both in their initial application for attorneys' fees and in this motion to reconsider, plaintiffs have submitted a detailed argument as to the standards to be used in determining attorneys' fees, a breakdown of the time of the various attorneys who worked on the case, detailed background of each of the attorneys, a list of previous attorneys' fees awards which the various attorneys have received in practice before this Court and an assessment of the complexity of the legal issues involved.

None of the defendants has addressed the question of the amount of attorneys'

fees. The defendant School District attached the following statement and request to its argument against the granting of fees,

> Defendant-School District is not now addressing the amount of attorneys' fees claimed by plaintiffs in this action, because it is our view that there is no statutory basis on which to base such a fee award. If the Court were to disagree with defendant-School District's contention concerning the unavailability of a fee award, the Court is respectfully requested to order a hearing to determine this issue and to allow defendant-School District a sufficient period of time to complete reasonable discovery.

A similar request is contained in the last paragraph of the affidavit of Kenneth Pawson, Esq., attorney for the State defendants.

Defendants' requests are denied. The plaintiffs have correctly pointed out that defendants have been on notice concerning these issues since May of this year—well over six months ago. They had an obligation to conduct any discovery necessary to their argument prior to filing their opposition papers. In addition, both of the requests are merely general requests for a hearing, raising no issues of fact which need to be resolved. Plaintiffs application for fees are amply supported by detailed documentation of the service performed and time spent in each instance. I am persuaded by the authority cited by the plaintiff that:

> Discovery requests should be precisely framed and promptly advanced before final opposition papers are filed. The District Court and the applicant are entitled to have discovery demands in clear outline at an early stage after the fee application is filed. Unfocused requests to initiate discovery without indicating its nature or extent serve no purpose, and the District Court has full discretion to deny such requests.

*National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1329 (D.C.Cir.1982). Defendants' requests for discovery and an evidentiary hearing on the question of attorneys' fees are denied. There is sufficient detail submitted by the plaintiffs in support of their requested fees.

In calculating the attorneys' fees I utilize the accepted approach of multiplying the number of billable hours for each attorney by the appropriate hourly rate for that attorney. *City of Detroit v. Grinnell Corporation,* 560 F.2d 1093 (2d Cir.1977), *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

Three attorneys worked on this case for the plaintiffs; Betsy Broadman Swan, Esq. originally worked on the complaint in her capacity as an attorney for the Monroe County Legal Assistance Corporation ("MCLAC"). She worked initially with Elizabeth Schneider, Esq., who began work on the case while an attorney at Statewide Youth Advocates and continued to be the lead attorney in the case when she went to Greater Upstate Law Project (a legal service corporation state support center providing legal support to attorneys at legal service programs such as MCLAC). When Ms. Swan left MCLAC, work on the case for that organization was taken over by their litigation director, Mr. Bryan Hetherington, Esq. Typewritten copies of the detailed, contemporaneously kept timeslips were submitted for the work of all three attorneys.

This litigation was begun of March of 1981 when the plaintiffs' attorneys filed a complaint which contained 178 numbered paragraphs. In addition to the voluminous documents submitted by all the parties over the years, plaintiffs' attorneys were involved in weekly negotiation sessions with the defendants for over a year. As part of the consent decree, plaintiffs' attorneys have been involved, and will continue for an additional year to be involved, in monitoring the compliance of the defendant Board of Education with the terms of their consent decree.

Based on the work involved in this case, I consider the billable hours submitted by the plaintiffs' attorneys to be appropriate given the complexity of this case and the time it took to achieve successful results:

Elizabeth L. Schneider, Esq.—1,266 hours

Bryan D. Hetherington, Esq.—595.6 hours

Betsy Broadman Swan, Esq.—92.8 hours

In calculating the appropriate hourly rate for attorneys' fees under the Handicapped Children Protection Act, I take note of the fact that the Act specifically directs that the award be for reasonable attorneys' fees "based on rates prevailing in the community in which the action or proceeding arose." Plaintiffs' attorneys in this case are all employees of non-profit law firms, branches of the Legal Services Corporation. The Second Circuit Court of Appeals has warned of the danger of "windfall" awards to non-profit law offices, but concluded that it was proper for District Courts "to award fees to non-profit law offices at billing rates of comparable attorneys in the general run of cases so long as the billing rates are not so high that their use risks significant windfalls ..." *New York Association for Retarded Children v. Carey,* 711 F.2d 1136, 1151 (2d Cir.1983). The legislative history of the Handicapped Children Protection Act suggests that the intent of Congress was to allow non-profit law firms to recover attorneys' fees at the same hourly rate as profit making law firms. The original Senate version of the bill contained a ceiling on awards of attorneys' fees to publicly funded legal services organizations, but no ceiling on the award to private attorneys. The ceiling on awards to public interest attorneys was deleted from the bill by the House/Senate Conference Committee. 132 Cong.Rec. H4527.

Plaintiffs have requested an hourly rate of $100 per hour for Ms. Swan and $105 per hour for both Mr. Hetherington and Ms. Schneider. These are rates which these particular attorneys have been awarded either under 42 U.S.C. § 1988 or under the Equal Access to Justice Act, both by this Court and by the other Federal District Courts in the Western District of New York. I conclude that these requested rates are reasonable and they certainly are within the "rates prevailing in the community."

Plaintiffs' attorneys will continue during the 1986–87 school year to be involved in the monitoring of the defendant Board of Education as provided in the consent decree, *supra.* Mr. Hetherington and Ms. Schneider will receive the same hourly rate for this work and they should, at the end of the school year, submit to this Court for approval an affidavit of the hours spent in monitoring the local school board's compliance with the consent decree.

## CONCLUSION

For the above stated reasons, plaintiffs' motion for attorneys' fees as against the defendant State Department of Education and Commissioner Gordon Ambach is denied. Plaintiffs' motion for attorneys' fees as against the defendant Board of Education of the Rochester City School District is granted. The requests of defendants for discovery and an evidentiary hearing on the amount of attorneys' fees is denied. Plaintiffs' attorneys are awarded attorneys' fees for the following hours and rates:

Elizabeth L. Schneider, Esq.—1,266 hours at $105 per hour = $132,930.00

Bryan D. Hetherington, Esq.—595 hours at $105 per hour = $62,538.00

Betsy Broadman Swan, Esq.—92.8 hours at $100 per hour = $9,280.00

for a total attorneys' fee award to plaintiffs' counsel of $204,748.00. Additionally, plaintiffs' attorneys will be awarded fees for the time spent monitoring the consent judgment during the 1986–87 school year at the rate of $105 per hour; after they have submitted their billable hours to this Court for approval

ALL OF THE ABOVE IS SO ORDERED.