AUSTINTOWN LOCAL SCHOOL DISTRICT BOARD
OF EDUCATION et al., Appellants,

v.

MAHONING COUNTY BOARD OF MENTAL RETARDATION AND
DEVELOPMENTAL DISABILITIES et al., Appellees.

[Cite as *Austintown Local School Dist. Bd. of Edn. v. Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities* (1998), 131 Ohio App.3d 711.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 CA 106.

Decided Dec. 18, 1998.

712

*R. Brent Minney; Robert S. Mills* and *Michael Kirkman,* for appellants.

*Stephen T. Bolton* and *Timothy J. Jacob,* for appellee Mahoning County Board of Mental Retardation and Developmental Disabilities.

*Betty D. Montgomery,* Attorney General, and *David J. Kovach,* Assistant Attorney General, for appellee Ohio Department of Mental Retardation and Developmental Disabilities.

---

VUKOVICH, Judge.

The following appeal arises from a decision by the Mahoning County Common Pleas Court that denied the motion of Ohio Legal Rights Service ("OLRS") motion for attorney fees in the amount of $94,601.12 for services rendered on behalf of four children seeking educational enrollment in a program operated by the Mahoning County Board of Mental Retardation and Developmental Disabilities. For the following reasons, the judgment of the trial court is reversed and this cause is hereby remanded to the trial court for further consideration of reasonable attorney fees.

## I. FACTS

This appeal pertains to four students, Dacia Kieger, Nena Edwards, William Russell Jones, and Jennifer Jones ("Intervenors"), who were residing at the Youngstown Developmental Center ("YDC"), located in the Austintown Local School District. YDC does not maintain educational programs on the premises. Consequently, a hearing was held to find an educational institution suitable to meet the intervenors' needs.

The Education of the Handicapped Act ("EHA"), Section 1400 et seq., Title 20, U.S.Code, requires local educational agencies to provide children with a free appropriate public education. EHA was enacted with a primary purpose of providing funding for special needs programs. A state's compliance with the procedural safeguards mandated in the statute is a precondition to receive such federal funding. S.Rep. No. 94–445, 94th Cong., 1st Sess., reprinted in 1975 U.S.Code Cong. & Adm.News 1425, 1480, 1501 (1975). A state seeking to qualify for federal funds must develop policies assuring all disabled children a "free appropriate public education." The state must also file formal plans mapping out in detail the programs, procedures, and timetable under which it will effectuate these policies. Sections 1412(1) and 1413(a), Title 20, U.S.Code.

EHA was amended in 1990 and was renamed the Individuals with Disabilities Education Act ("IDEA"). The primary vehicle for implementing congressional goals through IDEA is the Individualized Education Program ("IEP"), which is required for each disabled child. IEP is developed at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child. IEP sets forth the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes specially designed instructions and services that will enable the child to meet these objectives. See Section 1401(19), Title 20, U.S.Code.

The Act establishes various procedural safeguards that guarantee the parents and the child an opportunity for meaningful input into all decisions affecting the child's education and the right to seek review of any decision they think inappropriate. These safeguards include an opportunity to present complaints concerning any aspect of the local educational agencies provision of a free appropriate public education and an opportunity for "an impartial due process hearing with respect to any such complaints." See Section 1415(c) and (e)(2).

The state has adopted these extensive procedural safeguards in R.C. 3323.05, which substantially echoes the terms set forth in the federal statute.

In the case at bar, Dacia Kieger and William Russell Jones requested conferences to develop an IEP for the 1987–1988 school year. Although Dacia and William were supposed to be placed in a program operated by the Mental Retardation and Developmental Disability Board ("MRDD"), MRDD refused to accept them into the program. The Austintown Local School District Superintendent sent a letter to the Superintendent of MRDD requesting Dacia and William's admittance for the 1987–1988 school year, but the request was refused.

On September 4, 1987, the Austintown Local School District Board of Education ("Austintown Board") filed a complaint on behalf of Dacia and William against MRDD and YDC. The Austintown Board sought a declaratory judgment and injunctions which would enroll Dacia and William into the program run by MRDD. The Austintown Board alleged that MRDD prevented it from providing Dacia and William with a free appropriate public education since YDC did not have an educational facility and MRDD refused to admit them into its program. The students independently filed for impartial due process hearings to resolve the matter pursuant to Sections 1415(c) and (e)(3), Title 20, U.S.Code.

The Austintown Board then filed a motion for a temporary restraining order to compel MRDD to accept Dacia and William into its program until their impartial due process hearings had been resolved. The trial court granted the temporary restraining order.

In the interim, IEP teams met again to discuss placing two other children residing at YDC, *i.e.*, Nena Edwards and Jennifer Jones. The IEP teams recommended educating these children in the same program operated by MRDD, but MRDD again refused. The Austintown Board filed an amended complaint with the trial court adding Edwards and Jones as parties to the action. Edwards and Jones simultaneously filed an action in the United States District Court for the Northern District of Ohio. The action sought the same relief as was requested in state court.

On September 17, 1987, the Austintown Board filed a motion for preliminary injunction against MRDD to accept Edwards and Jones during their due process hearings. Dacia Kieger and William Russell Jones then filed a motion to intervene and a complaint for declaratory relief on their own behalf. The trial court accepted their motion on October 7, 1987.

Prior to hearing the motion for preliminary injunction, MRDD entered into a temporary agreement with the intervenors and the Austintown Board. The temporary agreement was memorialized by the trial court on September 21, 1987. The parties agreed that the intervenors would be admitted into the program pending outcome of all administrative proceedings. The agreement ordered MRDD to admit Nena Edwards and Jennifer Jones on September 21, 1987 and Dacia Kieger and William Russell Jones no later than October 1, 1987. Edwards and Jennifer Jones subsequently voluntarily dismissed their action in federal court because of this agreement.

Approximately eleven months after the temporary agreement was memorialized by the trial court, Edwards and Jones filed a motion to intervene into the action filed in state court. The trial court granted the motion on September 12, 1988. Prior to resolution of the intervenors' due process hearings, intervenors and the Austintown Board filed motions for summary judgment. They alleged that the intervenors were entitled to receive educational services from MRDD because the intervenors resided in the Austintown Local School District. They requested a permanent injunction to enforce intervenors' enrollment.

MRDD responded with a motion for summary judgment, alleging that the intervenors were not entitled to a free appropriate public education in Mahoning County because they were not residents therein. MRDD argued that the intervenors' residence was governed by their parents' place of residence. The intervenors countered that MRDD had a duty to educate them because intervenors were residing at YDC in Mahoning County and they were not domiciled at their parents' place of residence.

The trial court ordered the motions for summary judgment to be held in abeyance pending the resolution of the administrative proceedings.

On December 27, 1989, the trial court prepared a memorandum wherein the trial court granted intervenors' and the Austintown Board's motion for summary judgment insofar as MRDD was required to educate the children for the school year. MRDD's motion for summary judgment was overruled. The memorandum was finalized on January 30, 1990. The trial court's decision was affirmed by the Supreme Court of Ohio. 66 Ohio St.3d 355, 613 N.E.2d 167.

On March 28, 1990, the intervenors' counsel filed a motion for attorney fees. MRDD filed a response to the motion on April 16, 1990. The trial court reserved ruling on this issue because issues had not been completely resolved.

Counsel for Edwards and Jones filed a motion for award of attorney fees in federal court. Their motion was denied on April 28, 1989.

On October 4, 1993, the intervenors' filed a renewed motion for attorney fees.

On April 27, 1995, the trial court held that intervenors were not entitled to attorney fees on three grounds: (1) Jennifer Jones and Nena Edwards were collaterally estopped from an award of attorney fees by the action in federal court, (2) intervenors did not obtain a judgment from an impartial due process hearing, and (3) intervenors were not "prevailing parties." Intervenors filed a timely appeal to this court on May 16, 1995.

## II. ASSIGNMENTS OF ERROR ONE, TWO, AND THREE

Intervenors set forth four assignments of error on appeal. The first three assignments of error will be treated together since the thrust of each is that intervenors are entitled to attorney fees. The assignments of error on appeal read as follows:

"[1.] The trial court committed prejudicial error when it ruled that Intervenors are not eligible for attorneys' fees under the Individuals with Disabilities Act, 20 U.S.C. 1400 et. seq."

"[2.] The trial court committed prejudicial error when it ruled that the Intervenors are not 'prevailing parties' entitled to an award of attorneys' fees."

"[3.] The trial court committed prejudicial error when it ruled that Intervenors are not entitled to an award of attorneys' fees pursuant to 42 U.S.C. 1988."

Intervenors argue that they are entitled to attorney fees because (1) MRDD violated Section 1415(e)(3), Title 20, U.S.Code, known as the "stay put" provision, (2) they did not need to exhaust their remedies because they reached a settlement, (3) they are prevailing parties, and (4) furthermore, under the terms of Section 1988, Title 42, U.S.Code, they are entitled to attorney fees.

## A. LAW

The pertinent provisions of Section 1415, Title 20, U.S.Code, read:

"(b)(2) Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

"* * *

"(e)(2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section * * *, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. * * *

"(e)(3)(A) [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

"* * *

"(e)(4)(B) In any action or proceeding brought under this subsection, the court, *in its discretion,* may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." (Emphasis added.)

The Office of Special Education Programs ("OSEP") clarified what the intent of the "stay put" provision is in response to an inquiry. The OSEP wrote:

"[W]hen a handicapped child transfers from one school district to another within a State, the receiving local educational agency must maintain the child's 'then current educational placement' during the pendency of any reevaluation or administrative and judicial proceedings. EHA does not require maintaining the placement in the former school district. However, the local educational agency must provide the complete program of special education and services as described in the child's IEP, including the goals and objectives and the educational program option if that type of placement is so intertwined with the goals and objectives that it is a necessary component of the program described in the IEP." 2 EHLR Dec. 211:403, 405.

■ If an IEP program has already been implemented, it is subject to the "stay put" provision. *Thomas v. Cincinnati Bd. of Edn.* (C.A.6 1990), 918 F.2d 618, 626.

## B. ANALYSIS

According to the settlement agreement, MRDD was required to accept the intervenors into its program pending the outcome of the administrative and legal proceedings. An IEP had been established before they were placed at YDC. The intervenors' then-current educational placement was known before MRDD refused to accept the intervenors. Consequently, the only issue remaining was whether the intervenors were residents of Mahoning County. The Supreme Court of Ohio held that they were and it is not disputed herein.

■ Although the MRDD failed to meet its obligation under Section 1415(e)(3), Title 20, U.S.Code, the intervenors must exhaust their remedies before filing suit in civil court. A waiver of exhaustion of administrative remedies is possible when (1) plaintiffs have no access to administrative remedies, (2) adequate and speedy state remedies are not available, or (3) an irreparable injury is about to occur, for example, where a school board fails "to provide services during the pendency of proceedings." *J.G. v. Rochester City School Dist. Bd. of Edn.* (W.D.N.Y.1986), 648 F.Supp. 1452, 1457.

■ Moreover, exhaustion of remedies is not required where a settlement agreement has been reached before the due process hearing. The Ninth Circuit Court of Appeals analyzed the issue of attorney fees prior to the due process hearing in *Barlow–Gresham Union High School Dist. v. Mitchell* (C.A.9, 1991), 940 F.2d 1280, 1284. The court stated:

"Legislative history reveals Congress' intent that the Handicapped Children's Protection Act (HPCA), 20 U.S.C. 1415(e)(4)(B), be interpreted with the fee provisions under 42 U.S.C. 1988 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e). * * *

"In 1986, Congress amended the Education of the Handicapped Act with the HCPA in order to provide attorneys' fees for parents in certain circumstances * * *.

"The clear language of section 1415(e)(4)(B) contemplates an award of attorneys' fees at the administrative level. The provision specifically refers to 'any action or proceeding brought.' Further, this circuit has held that parents who prevail at the administrative hearing are entitled to attorneys' fees under the HCPA * * *.

"* * * Thus far, the only circuit to deal directly with [the issue of whether 1415(e)(4)(B) provides for attorneys' fees to be awarded when settlement is reached prior to the due process hearing] * * * is the Fifth Circuit in *Shelly C. v. Venus Indep. School Dist.* (5th Cir.1989), 878 F.2d 862 cert. denied (1990), 493 U.S. 1024, 110 S.Ct. 729, 107 L.Ed.2d 748. There, the court upheld the award of attorneys' fees following settlement of a suit over an individualized education program."

The Ninth Circuit Court of Appeals held that 1415(e)(4)(B) permitted "the prevailing parties to recover attorneys' fees when settlement is reached prior to the due process hearing." *Id.* at 1285. See, also, *Maher v. Gagne* (1980), 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–2575, 65 L.Ed.2d 653, 661.

In the case *sub judice,* however, settlement was relevant only in that it allowed the intervenors to attend the program until the administrative and legal proceedings were over. The final resolution of this case resulted in the trial court's decision to grant intervenors' summary judgment motion, allowing them to attend the program on a permanent basis for the remainder of the 1987–1988 school year.

More important, the basis of intervenors' complaint sought declaratory judgment. Civ.R. 57 states:

"The existence of another adequate remedy at law does not preclude a judgment for declaratory relief in cases where it is appropriate. The court may advance on the trial list the hearing of an action for declaratory judgment."

■ The failure to exhaust administrative remedies is not a jurisdictional defect in a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained. *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 462, 674 N.E.2d 1388, 1392:

"We therefore hold that the doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained. *Gannon v. Perk* [1976], 46 Ohio St.2d 301, 75 O.O.2d 358, 348 N.E.2d 342; *Driscoll v. Austintown Assoc.* [1975], 42 Ohio St.2d 263, 71 O.O.2d 247, 328 N.E.2d 395.

"We observe that our holding is not to be read as a rejection of the force of the doctrine requiring exhaustion of administrative remedies in general. We agree with the United States Supreme Court and the courts of the many jurisdictions that have echoed the words of *Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638, 644: '[It is] the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or

threatened injury until the prescribed administrative remedy has been exhausted.'"

■ Intervenors' failure to exhaust remedies was not mentioned in either MRDD's answer or its affirmative defenses. The first mention of failure to exhaust was made by the trial court upon ruling on the motion for attorney fees. As such error was not raised as an affirmative defense, MRDD waived its right to assert it upon appeal. *Jones, supra.*

■ In addition, the final decision to admit intervenors for the 1987–1988 school year was a result of their summary judgment motion. The settlement agreement granted intervenors admission only during the pendency of administrative and legal proceedings. It is crucial to note that all four intervenors became party to the suit at the time summary judgment was granted in their favor since the parties must prevail in order to be entitled to an award of attorney fees. Equally important is the fact that intervenors' counsel seeks attorney fees for all work completed through the filing of their motion for attorney fees, and not merely for work done until the time of settlement.

The Third Circuit Court of Appeals enunciated the standard for determining prevailing-party status:

"We apply a two-part test [in determining a right to attorney fees under EHA]: whether plaintiffs achieved relief and whether there is a causal connection between the litigation and the relief from the defendant." *Wheeler v. Towanda Area School Dist.* (C.A.3 1991), 950 F.2d 128, 131, citing *Institutionalized Juveniles v. Secy. of Pub. Welfare* (C.A.3, 1985), 758 F.2d 897, 910.

According to the United States Supreme Court:

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby* (1992), 506 U.S. 103, 111–112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 503.

MRDD incorrectly argues that the intervenors cannot be prevailing parties who are entitled to an award of attorney fees because the settlement agreement was procured by Austintown Board's complaint without regard to any action subsequently taken by the intervenors. MRDD also argues that intervenors were not a party to the suit at the time the settlement agreement was entered into. Thus, MRDD argues that the intervenors cannot show that their subsequent suit was causally related to the settlement agreement.

MRDD's argument fails to recognize that intervenors had materially altered their relationship with MRDD in that they procured permanent placement at the Leonard Kirtz School for the 1987–1988 year via summary judgment in their

favor, albeit they were not "parties" to the lawsuit when the settlement agreement was completed.

■ However, intervenors' ability to seek attorney fees is not precluded by their settlement agreement. Exhaustion is excused where the school refuses to provide services pending proceedings. Further, the "stay put" provision mandates that the children receive their then current educational placement. Intervenors, prior to moving to YDC, were educated at schools for the multihandicapped. To comply with the statute, MRDD would have to place the intervenors in a similar program during the proceedings. Merely placing the intervenors in a public school does not satisfy MRDD's duties.

■ Once it has been established that the plaintiff is a prevailing party, the trial court, in its discretion, may award reasonable attorney fees. See Section 1415(e)(4)(B), Title 20, U.S.Code. The United States Supreme Court has identified the factors under which an award may be made in *Hensley v. Eckerhart* (1983), 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. The court examined the purpose of attorney fees and concluded that a prevailing plaintiff should recover attorney fees unless special circumstances would render the award unjust. *Id.* at 429, 103 S.Ct. at 1937, 76 L.Ed.2d at 47–48,. Ultimately the court determined:

"A request for attorney's fees should not result in a second major litigation. * * * Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.

"We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in light of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award. [T]he district court should make clear it has considered the relationship between the amount of the fee awarded and the results obtained." (Footnote and citation omitted.) *Id.* at 437, 103 S.Ct. at 1941, 76 L.Ed.2d at 53.

Intervenors' first three assignments of error have merit.

## III. ASSIGNMENT OF ERROR FOUR

Intervenors' fourth assignment of error reads:

"The trial court committed prejudicial error when it ruled that Intervenors Jennifer Jones and Nena Edwards are collaterally estopped from an award of attorneys' fees by the Federal District Court Order of April 28, 1989."

Intervenors argue that since the federal court failed to address intervenors' eligibility for attorneys' fees based upon Section 1988, Title 42, U.S.Code, the decision rendered in federal court cannot collaterally estop Nena Edwards and Jennifer Jones in the present action.

## A. LAW

"Collateral estoppel" was defined by the Ohio Supreme Court in *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, paragraphs one and two of the syllabus:

"A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action upon the same cause of action between the parties or those in privity with them. The prior judgment is res judicata as between the parties or their privies. (Paragraph No. 1 of syllabus of *Norwood v. McDonald* [1944], 142 Ohio St. 299 [27 O.O. 240, 52 N.E.2d 67], approved and followed.)

"A final judgment or decree in an action does not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter. However, a point of law or a fact which was actually and directly in issue in the former action, and was there passed upon and determined by a court of competent jurisdiction, may not be drawn in question in a subsequent action between the same parties or their privies. The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action. (Paragraphs Nos. 2 and 3 of syllabus of *Norwood v. McDonald* [1944], 142 Ohio St. 299 [27 O.O. 240, 52 N.E.2d 67], approved and followed.)"

## B. ANALYSIS

■ Nena Edwards and Jennifer Jones sought attorney fees in both the federal court and in state court. Their claim, whether it be pursuant to Section 1988, Title 42, U.S.Code, or Section 1415(e)(4)(B), Title 20, U.S.Code, arises from the same nucleus of operative facts. The fact that the federal court did not address their claim pursuant to Section 1988 does not allow them to assert the claim herein. Edwards's and Jones's failure to avail themselves of all possible grounds of relief from the federal court's decision has barred any claim to relief herein insofar as it relates to attorney fees for work done up to the time of the

federal court's decision. See *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 383–384, 653 N.E.2d 226, 229–230.

But because the federal court only considered the request of Nena Edwards and Jennifer Jones for attorney fees up to the settlement, Edwards and Jones may still be entitled to attorney fees incurred after the federal court's decision was filed relative to any postsettlement proceedings.

■ MRDD raises one last issue with respect to attorney fees. It argues that even if intervenors were entitled to attorney fees, state law precludes Ohio Legal Rights Service from obtaining an award of fees in this action. As support, MRDD relies on *James H. v. Ohio Dept. of Mental Health & Mental Retardation* (1980), 1 Ohio App.3d 60, 62, 1 OBR 6, 9, 439 N.E.2d 437, 440, wherein it was stated:

"[W]e are of the opinion that their [OLRS] authorization is to see that the law is enforced, rather than to obtain money damages for past violations of the law. It does not appear that all legal remedies are empowered."

MRDD's argument is flawed as *James H., supra,* did not address the issue of attorney fees. Money damages are an entirely different remedy from attorney fees. As the Sixth Circuit Court of Appeals held:

"[T]he HCPA allows an award of attorney's fees to prevailing parents represented by publicly-funded attorneys. Nothing in the legislative history or the language of the statute was meant to exclude state-funded entities. * * * Thus, pursuant to the courts holding in *Washington* [*v. Seattle School Dist. No. 1* (1982), 458 U.S. 457, 102 S.Ct. 3187, 73 L.Ed.2d 896] and the intent of Congress in passing the HCPA, we hold that * * * prevailing parties represented by state-funded attorneys are allowed an award of attorney's fees." *Eggers v. Bullitt Cty. School Dist.* (C.A.6, 1988), 854 F.2d 892, 900.

Therefore, there is no prohibition on OLRS seeking reasonable attorney fees.

In light of Section 1415(e)(4)(B), Title 20, U.S.Code, this matter is hereby reversed and remanded for the trial court's determination whether an award of reasonable attorney fees is warranted. We caution the court, however, that its discretion must be exercised in light of the factors which were identified in *Hensley, supra,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40.

*Judgment reversed*
*and cause remanded.*

GENE DONOFRIO, P.J., concurs.

Cox, J., concurs in judgment only.