OLIVAS, Appellee,

v.

CINCINNATI PUBLIC SCHOOLS, et al.; Cincinnati
Board of Education, Appellant.

[Cite as *Olivas v. Cincinnati Pub. Schools*, 171 Ohio App.3d 669, 2007-Ohio-1857.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060417.

Decided April 20, 2007.

670

Cohen, Todd, Kite & Stanford, L.L.C., John L. O'Shea, and Heidi A. Selden, for appellee.

McCaslin Imbus & McCaslin and R. Gary Winters, for appellant.

SUNDERMANN, Judge.

{¶ 1} The Cincinnati Board of Education ("school board") appeals the trial court's judgment for Rose Olivas. We conclude that the trial court erred when it refused to dismiss Olivas's claims for declaratory judgment, injunctive relief, and damages against the school board and that it erred in awarding attorney fees and costs in the amount of $57,181.46. For the reasons that follow, we reverse the judgment of the trial court and remand the cause for a recalculation of attorney fees and costs.

## Background

{¶ 2} Olivas and her son Juan Carlos Lugo moved to Cincinnati in June 2005, and Juan Carlos was enrolled in Mt. Washington Elementary School. At that time, an Individualized Education Program ("IEP") was in place for Juan Carlos, who had been diagnosed with autism, Asperger's syndrome, attention deficit hyperactivity disorder, and other disabilities. The IEP required, in part, that Juan Carlos receive door-to-door busing.

{¶ 3} Olivas and Juan Carlos lived in an apartment building with a steep driveway. The Cincinnati Public Schools ("CPS") transportation director determined that it was unsafe for a bus to travel up the hill to pick up and drop off Juan Carlos. Instead, a special bus stop was established at the end of the driveway where it met Beechmont Avenue, a busy street. According to Olivas, the bus stop was not adequate. Olivas is disabled and was unable to walk Juan Carlos to the stop. And in view of his disabilities, it was unsafe for Juan Carlos to go to the stop by himself.

{¶ 4} School started on August 23, 2005. Due to the lack of transportation, Juan Carlos did not attend school until September 13 or 14. He was able to attend school consistently beginning on September 14, because Olivas had arranged for neighbors and friends to escort him to and from the stop and had paid for a taxi to take him to school on at least two occasions.

{¶ 5} The IEP that was in place at the start of the school year was to be reviewed on September 23, but because Juan Carlos had not attended school regularly during the first month, the review was moved to November 3. On November 2, 2005, Olivas filed a request for a due-process hearing under Section 1415(b) and (f), Title 20, U.S.Code. On November 3, Olivas signed a new IEP that provided, in part, that Juan Carlos would receive door-to-door transportation. The due-process hearing was scheduled for December 12–14, but upon the motion of the school board, the hearing was moved to January 23–25.

{¶ 6} Throughout this time, Olivas was represented by counsel. In a letter received on December 27, 2005, by Olivas's counsel, the school board proposed a settlement to Olivas. The school board proposed that CPS would provide an individual to escort Juan Carlos between his apartment and the bus stop, that the school board would reimburse Olivas the $368 that she had paid for Juan Carlos's transportation from September to December, and that the school board would pay her attorney fees of $1,000. In her request for a due-process hearing, Olivas had proposed that the school board contract with a different transportation company that could send a bus up the apartment complex's driveway, or, in the alternative, that the school board provide an escort. Olivas rejected the school board's settlement offer on January 3, 2006.

{¶ 7} On December 30, 2005, Olivas filed in common pleas court a complaint for declaratory judgment, injunctive relief, and damages under Section 1400 et seq., Title 20, U.S.Code ("the IDEA") and R.C. 3323.01 et seq. On that day, the trial court granted a temporary restraining order that required the school board "to provide door-to-door transportation by having an aide escort [Juan Carlos] to and from home to the bus stop." The school board provided the aide beginning on January 2.

{¶ 8} On January 6, the school board filed its answer, asserting as one of its defenses that Olivas had failed to exhaust her administrative remedies available under the IDEA. It also filed a motion to dismiss or stay the action for the same reason.

{¶ 9} The due-process hearing commenced on January 23. On January 24, the trial court issued an order that postponed pending depositions and that stated that the school board had agreed to "waive any and all rights of appeal of any decisions entered in the Due Process Hearing."

{¶ 10} The hearing officer's decision was issued on February 27, 2006. In it, the hearing officer found that the school board was required to provide door-to-door transportation because it had agreed to do so in the IEP and that the school board had satisfied its obligation since January 2 with its provision of the escort for Juan Carlos. The hearing officer found that it would have been unsafe for a bus to drive into the apartment complex's parking lot and that it was unnecessary for the school board to contract separately for a transportation company to enter the driveway. The hearing officer held that the school board should continue providing the escort and that the school board should reimburse Olivas $368 for the cost of transporting Juan Carlos to school from September to December.

{¶ 11} On March 8, 2006, Olivas filed a supplemental complaint, requesting that the trial court confirm and adopt the decision of the hearing officer and that the trial court award attorney fees and costs. The trial court entered a judgment adopting the hearing officer's decision and ordered that the school board pay attorney fees and costs in the amount of $57,181.46.

## Exhaustion of Administrative Remedies

{¶ 12} In its first assignment of error, the school board asserts that the trial court erred when it asserted subject-matter jurisdiction over the case and when it entered judgment for Olivas.

{¶ 13} Olivas sought recovery under the IDEA and the corresponding Ohio statutes, R.C. 3323.01 et seq. The IDEA provides that children with disabilities are entitled to "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."[1] To this end, a child's school district, teacher, and parents develop an IEP "[to establish] annual and short-term objectives for improvements in [the child's educational] performance, and [the IEP] describes the specially designed instruction and services that will enable the child to meet those objectives."[2] The parties in this

---

1. Section 1400(d)(1)(A), Title 20, U.S.Code.

2. *Honig v. Doe* (1988), 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686.

case do not dispute that Juan Carlos's transportation to school was an appropriate part of his IEP.

{¶ 14} The IDEA provides safeguards for parents, including a process by which a parent can request that a due-process hearing be conducted by the state or local educational agency if she is not satisfied with implementation of her child's IEP.[3] If the parent is aggrieved by the decision of the local agency, she may appeal its decision to the state agency,[4] and in turn, the parent may appeal the state agency's decision to federal or state court.[5]

{¶ 15} Because an extensive administrative process is provided by the statute, a party must exhaust her administrative remedies before seeking redress in court.[6] The requirement "prevents courts from undermining the administrative process and permits an agency to bring its expertise to bear on a problem as well as to correct its own mistakes."[7] But the exhaustion-of-remedies requirement is not an absolute requirement. A party can be excused from the requirement if she demonstrates one of the following: that she is seeking redress for a constitutional violation not addressed by the statute, that the local agency has thwarted her attempts to seek administrative remedies, that recourse to the administrative process would be futile or that any remedy provided in the administrative process would be inadequate, or that the party will be irreparably harmed if the administrative process is followed.[8]

{¶ 16} In this case, Olivas did not seek redress for a constitutional violation. Nor did she suggest that the school board had in any way thwarted her attempts to follow the administrative procedure. Instead, she urged the trial court to excuse her failure to exhaust her administrative remedies because to follow the administrative procedures provided in the IDEA would have been futile and because Juan Carlos would have been irreparably harmed had she waited. The burden of proving futility or irreparable harm lay with Olivas.[9]

---

3. Section 1415(b) and (f), Title 20, U.S.Code.

4. Section 1415(g), Title 20, U.S.Code.

5. Section 1415(i)(2), Title 20, U.S.Code.

6. Section 1415(*l*), Title 20, U.S.Code. See, also, *Austintown Local School Dist. Bd. of Edn. v. Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities* (1998), 131 Ohio App.3d 711, 719, 723 N.E.2d 617.

7. *Heldman v. Sobol* (C.A.2, 1992), 962 F.2d 148, 159.

8. *Pihl v. Massachusetts Dept. of Edn.* (C.A.1, 1993), 9 F.3d 184, 190–191.

9. See *Honig*, 484 U.S. at 327, 108 S.Ct. 592, 98 L.Ed.2d 686.

## Futility

{¶ 17} Olivas argues that the administrative process would have been futile because the school board had failed to address Juan Carlos's transportation problems from September to December. But her argument is not borne out by the record. While it appears that negotiations with the school board and the transportation department commenced in September, Olivas did not attempt to avail herself of the due-process hearing until November 2. Once the hearing was requested, the hearing was scheduled for December 12–14. Although the hearing was rescheduled for January 23–25 at the request of the school board, we do not view the delay alone as indicative of the futility of the process.

{¶ 18} That the process was not futile was further demonstrated by the hearing officer's decision that Olivas later requested that the trial court confirm. Less than 60 days after the resumption of the school year, the officer issued a decision that concluded that Olivas should get an escort, which was one of the alternatives that Olivas had suggested in her request for a due-process hearing. We conclude that Olivas did not demonstrate that exhaustion of her administrative remedies would have been futile.

## Irreparable Harm

{¶ 19} In addition to futility, Olivas argued that her failure to exhaust her administrative remedies was also properly excused because Juan Carlos would have been irreparably harmed by the attendant delay in awaiting an administrative remedy. According to Olivas, absent action from the common pleas court, the school board would not have provided transportation to Juan Carlos for the remainder of the year.

{¶ 20} The irreparable-harm exception should be "sparingly invoked."[10] We conclude that Olivas did not demonstrate irreparable harm. For the first half of the school year, Olivas had arranged for Juan Carlos to get to school by different means. The hearing officer recognized this and ordered the school board to reimburse her $368. Olivas did not present evidence that it was not possible for her to continue the arrangements into the second half of the year. In fact, in her appellate brief, Olivas states that if the issue were not resolved in the common pleas court, Juan Carlos would have had to take a taxi cab to school for the remainder of the year. While such an arrangement was not ideal, Juan Carlos would not have been irreparably harmed by it. And as demonstrated by the hearing officer's decision, reimbursement for alternative methods of transportation was an available remedy.

---

10. *Komninos v. Upper Saddle River Bd. of Edn.* (C.A.3, 1994), 13 F.3d 775, 779. See, also, *Rose v. Yeaw* (C.A.1, 2000), 214 F.3d 206.

{¶ 21} Because Olivas did not demonstrate that seeking redress through the administrative processes provided in the IDEA would have been futile or that Juan Carlos would have been irreparably harmed while awaiting an administrative resolution, we conclude that she should not have been excused from exhausting the administrative remedies. The trial court erred when it failed to dismiss her claims for declaratory judgment, injunctive relief, and damages. The first assignment of error is well taken.

## Attorney Fees

{¶ 22} In its second assignment of error, the school board asserts that the trial court erred when it awarded attorney fees and costs to Olivas. "In any action or proceeding brought under [Section 1415(i), Title 20, U.S.Code], the court, in its discretion, may award reasonable attorneys' fees as part of the costs * * * to a prevailing party who is the parent of a child with a disability." [11] Federal courts have overwhelmingly concluded that a due-process hearing under the IDEA is an "action or proceeding" and that Section 1415(i) "therefore authorizes the award of attorneys' fees to parents who prevail in such hearings, even if the due process hearing resolves the complaints made by a parent * * * and no judicial proceeding on the merits ensues." [12] So even though Olivas's claims for declaratory judgment, injunctive relief, and damages should have been dismissed because she had failed to exhaust her administrative remedies, Olivas's request for attorney fees and costs was properly before the trial court.

{¶ 23} The court awarded fees in the amount of $53,661.75 and costs in the amount of $3,519.71. The fees appear to include work done by Olivas's attorney on the claims filed in common pleas court. But under Section 1415(i), only fees related to the administrative proceedings should have been awarded to Olivas.

{¶ 24} The school board argues that any fees awarded to Olivas should not have included fees and costs for services performed after it had proposed a settlement to Olivas. We agree. Section 1415(i)(3)(D) provides that "[a]ttorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if (I) the offer is made * * *, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins; (II) the offer is not accepted within 10 days; and (III) the

---

11. Section 1415(i)(3)(B)(i)(I), Title 20, U.S.Code.

12. *Upper Valley Assn. for Handicapped Citizens v. Blue Mountain Union School Dist. No. 21* (D.Vt.1997), 973 F.Supp. 429, 433. See, also, *Kristi W. v. Graham Indep. School Dist.* (N.D.Tex.1987), 663 F.Supp. 86.

court * * * finds that the relief finally obtained by the parent[ ] is not more favorable to the parent[ ] than the offer of settlement."

{¶ 25} We are not persuaded by Olivas's argument that to be considered under Section 1415(i)(3)(D), the offer had to have been made at least ten days before her November 3 request for a due-process hearing. Federal courts that have discussed the limitation on attorney fees and costs subsequent to a settlement offer have used the date of the commencement of the hearing itself as the benchmark date.[13]

{¶ 26} The school board's settlement offer was made more than ten days before the hearing commenced on January 23 and was clearly rejected by Olivas. Although the proposal offered only $1,000 in attorney fees, the substance of the offer, as it related to Juan Carlos's educational needs, was exactly what the hearing officer had ordered. The attorney fees and costs should have been limited to those fees and costs incurred with respect to the administrative process prior to the school board's settlement proposal. The second assignment of error is well taken.

{¶ 27} We therefore reverse the trial court's judgment confirming the hearing officer's decision and awarding attorney fees and costs. This case is remanded to the trial court for a recalculation of attorney fees and costs in accordance with the terms of this decision.

Judgment reversed
and cause remanded.

CUNNINGHAM and DINKELACKER, JJ., concur.

---

13.   See *J.C. v. Vacaville Unified School Dist.* (Jan. 10, 2007), E.D.Cal. No. CIV. S–05–0092 FCD KJM, 2007 WL 112138; *M.L. v. Fed. Way School Dist.* (W.D.Wash.2005), 401 F.Supp.2d 1158; *Dell v. Bd. of Edn., Twp. High School Dist. 113* (N.D.Ill.1995), 918 F.Supp. 212.