Board of Education of Austintown Local School District Et Al.,
Appellees, *v.* Mahoning County Board of Mental Retardation and
Developmental Disabilities, Appellee; Ohio Department of Mental
Retardation and Developmental Disabilities et al., Appellants.

[Cite as *Austintown Local School Dist. Bd. of Edn.* v. *Mahoning Cty. Bd.
of Mental Retardation & Dev. Disabilities* (1993), 66 Ohio St.3d 355.]

(No. 92–144—Submitted March 10, 1993—Decided June 16, 1993.)

356

358

*Whalen & Compton Co., L.P.A., G. Frederick Compton, Jr.* and *R. Brent Minney,* for appellee Austintown Board of Education.

*Manchester, Bennett, Powers & Ullman, Stephen T. Bolton* and *Timothy J. Jacob,* for appellee Mahoning County Board of Mental Retardation and Developmental Disabilities.

*Ohio Legal Rights Service, Robert S. Mills* and *Daphne S. Meimaridis,* for intervenors-appellees.

*Lee I. Fisher,* Attorney General, and *David J. Kovach,* Assistant Attorney General, for appellants Ohio Department of Mental Retardation and Developmental Disabilities et al.

WRIGHT, J. This appeal presents three issues:

(1) Was the Mahoning County Board of Mental Retardation and Developmental Disabilities required to accept Dacia Kieger, Nena Edwards, William Russell Jones, and Jennifer Jones into the Leonard Kirtz School pursuant to the IEP developed for each child?

(2) Was the question of which agency is responsible to pay the costs of the special education of these children properly before the trial court?

(3) Was the YDC required to provide educational programs for any of the children?

For the reasons stated below, we find that the trial court correctly answered all of the above questions: The Mahoning County Board was required to accept the children into the Leonard Kirtz School, the issue of who is to pay for the education was not raised by the parties, and the Ohio Department was not required to provide educational programs at YDC in the absence of an IEP which recommended such programs as the appropriate educational placement.

I

The Individuals with Disabilities Education Act ("IDEA"), Section 1400 *et seq.*, Title 20, U.S.Code, provides federal funding to assist state and local educational agencies in educating children with disabilities. The purpose of IDEA is "to assure that all children with disabilities have available to them * * * a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and localities to provide for the education of all children with disabilities, and to assess and assure the effectiveness of efforts to educate children with disabilities." Section 1400(c), Title 20, U.S.Code.

To qualify for federal assistance, states must enact policies and procedures which are consistent with IDEA requirements. Section 1412, Title 20, U.S.Code. Ohio has done so through R.C. Chapter 3323. In addition, the State Board of Education has promulgated rules for the education of handicapped children under authority granted in R.C. 3323.03 and 3323.04.[3]

Incorporated into R.C. Chapter 3323 is the purpose of IDEA: to provide handicapped children a free, appropriate public education tailored to the unique needs of each child by developing an IEP which places the child in the least restrictive environment. R.C. 3323.01(D) and (E), 3323.02, 3323.08(C); Ohio Adm.Code 3301–51–02(E)(1)(d)(iv).

Former R.C. 3323.04 provided that the State Board of Education "shall require the board of education of each school district to place each handicapped child of compulsory school age residing within the district in an appropriate education program * * *." 138 Ohio Laws, Part I, 537.

Former R.C. 3313.64 provided, in pertinent part:

"(B) A child who is at least five but under twenty-two years of age shall be admitted to school as provided in this division * * *.
"* * * *

"(2) A child who does not reside in the district where his parent resides shall be admitted to the schools of the district in which he resides if any of the following apply:
"* * * *

"(b) He resides in a home;

"(c) He requires special education." 141 Ohio Laws, Part III, 5120–5121.

---

3. See Ohio Adm.Code Chapter 3301–51, effective July 1, 1982.

The intervenors are handicapped children in need of special education. They reside in YDC, which is a "home" as defined by R.C. 3313.64(A).[4] Because YDC is located in the Austintown school district, it was the responsibility of the Austintown Board to place these children in the appropriate education program.

As previously noted, the cornerstone of an appropriate placement is the IEP, the purpose of which is to determine the individual needs of the child and address those needs in the least restrictive environment consistent with his or her adaptive abilities. This reflects the modern approach to the education and training of mentally retarded citizens—an approach which deemphasizes the role of institutionalization. In an effort to achieve appropriate placements, Ohio Adm.Code 3301–51–02(E)(4)(f) requires each school district to ensure that a "continuum of alternative placements" is available to meet the special needs of handicapped children. This continuum which begins with the least restrictive environment and proceeds to the most restrictive is defined in Ohio Adm.Code 3301–51–01(H) as "the availability of different types of educational environments, including, but not limited to:

"(1) Regular classes;

"(2) Supplemental services;

"(3) Individual/small group instruction;

"(4) Special class/learning center located in:

"(a) A public school building;

"(b) A separate school in the school district;

"(c) A separate facility, such as:

"(i) A county board of mental retardation and developmental disabilities facility;

"(ii) The Ohio state school for the blind or the Ohio school for the deaf; or

"(iii) A state institution operated by the Ohio department of mental health, the Ohio department of mental retardation and developmental disabilities, or the Ohio youth commission; or

"(5) Home instruction."

The IEPs developed for the intervenors showed that the appropriate placement was at the Leonard Kirtz School. The Leonard Kirtz School is a

---

4. R.C. 3313.64(A) states in part:

"(4) Except as used in division (C)(2) of this section, 'home' means a home, institution, foster home, group home, or other residential facility in this state that receives and cares for children, to which any of the following apply:

"(a) The home is licensed, certified, or approved for such purpose by the state."

"[s]pecial class/learning center located in * * * [a] county board of mental retardation and developmental disabilities facility" referred to in Ohio Adm. Code 3301–51–01(H)(4)(b)(i).

Despite the conclusion of the IEPs, the Mahoning County Board refused admission of the students because it claimed that it was legally obligated only to residents of Mahoning County and that the students were residents of the counties in which their parents resided. The Mahoning County Board claimed that it had no duty to provide funding of services and facilities for children who are residents of other counties. The Mahoning County Board relies on R.C. 5126.05 for this position.

Former R.C. 5126.05(C) (now R.C. 5126.05[B][3]) stated in part that county boards of mental retardation shall:

" * * * Plan and set priorities based on available funds for the provision of both facilities and services to meet the needs of county residents with mental retardation or developmental disabilities and of former residents of the county presently residing in state institutions * * *." 141 Ohio Laws, Part I, 878.

Thus, the Mahoning County Board argues that R.C. 5126.05(C) limits its authority to serve only county residents and former residents of the county. However, this argument ignores other sections of former R.C. 5126.05, which provided in part:

" * * * [T]he county board of mental retardation and developmental disabilities shall:

"(A) Administer and operate facilities, programs, and services as provided by Chapters 3323. and 5126. of the Revised Code;

" * * *

"(H) Provide special education programs according to Chapter 3323. of the Revised Code[.]" 141 Ohio Laws, Part I, 878.

As discussed above, under R.C. 3313.64(B) *for purposes of school attendance* the children "reside" at YDC, which is within the Austintown school district and therefore within Mahoning County. Pursuant to R.C. 3323.04 and the IEPs, they can be placed in the Leonard Kirtz School.

The Mahoning County Board may not unilaterally refuse such a placement. If the board has objections to the placement it must look to the procedures set forth in R.C. 3323.04. That section provides in part:

"If an agency directly affected by a placement decision objects to such decision, an independent hearing officer * * * shall conduct a hearing to review the placement decision. * * * The decision of the hearing officer shall be final * * *."

The Mahoning County Board did not avail itself of this procedure. Instead it simply refused to accept the children until ordered to do so by the trial court.

The Attorney General has had occasion to construe the responsibilities of a county board under R.C. 3323.04 and 3323.09:

" * * * [T]he primary burden of educating mentally handicapped children is upon the local school districts, which must comply with all eligibility and placement requirements including the least restrictive placement requirement. However, when a local school district proposes to place a child in a program operated by the county board, the county board may not simply veto the placement decision. Any disagreements regarding placement are to be resolved by the arbitration procedure outlined in R.C. 3323.04." 1980 Ohio Atty.Gen.Ops. No. 80–009, at 2–50.

We agree. Therefore we hold that when, pursuant to R.C. 3323.04 and an IEP, a local school district proposes to place a handicapped child in a program operated pursuant to R.C. 3323.09 by a county board of mental retardation and developmental disabilities, the county board may not simply refuse to accept the child. The county board of mental retardation and developmental disabilities must resolve any objections to the placement through the procedure contained in R.C. 3323.04.

## II

The trial court ruled that "[t]his case, of course, concerns the obligation of the Mahoning County Board of Mental Retardation to accept the four children into its educational system, and not the obligation or issue of the payment of tuition. The question of liability for costs was not raised in the Complaint or Amended Complaint, and therefore is not addressed."

The court of appeals did not agree. It held that "the issue of the payment of tuition for the education of [intervenors] is an issue in this case and that the trial court erred in not recognizing that this was an issue in this case." The court of appeals went on to answer the question by holding that "pursuant to R.C. 3313.64(C), 3317.08, 3323.13 and 3323.14, the responsibility of paying the tuition for the education of [intervenors] is [on] the school districts which are the legal residences of the parents of [intervenors]."

The court of appeals also held that:

" * * * [B]y [the Ohio Department's] action in transferring [intervenors] from Wayne County to the Youngstown Developmental Center, it assumed the responsibility of educating [intervenors] at state expense. Under the facts of this case, we hold [the Ohio Department] is in the same position as the

school districts of the residences of the parents of [the] children in its relationship to [the Austintown Board] and [the Mahoning County Board] on the subject of educating [intervenors].

"We further hold that, pursuant to R.C. 3323.091, [the Ohio Department] is liable to reimburse both [the Mahoning County Board] and [the Austintown Board] for the cost of the education of [intervenors] that has been paid or will be paid out of Mahoning County or Austintown Township school funds."

The Austintown Board's amended complaint sought declaratory judgments and injunctions requiring the Mahoning County Board to admit the intervenors to the Leonard Kirtz School and requiring the state defendants to establish educational programs at YDC. Neither the original complaint nor the amended complaint requested a ruling on the issue of what entity was responsible to pay for the education. Intervenors filed a complaint and cross-claim seeking admission to the Leonard Kirtz School. They did not ask for a ruling on the question of payment for the education. The Mahoning County Board filed an answer to the Austintown Board's complaint but did not file a counterclaim or a cross-claim against the state defendants seeking a determination of who must pay for the education in the event the court ruled that the Mahoning County Board was required to admit the intervenors to its program.

The Mahoning County Board makes two arguments as to why the issue of costs was properly before the trial court. First it argues that a determination of a county board's authority to educate non-residents necessarily involves the issue of who pays for such education. It claims that it raised the issue of costs by asserting that its authority under R.C. 5126.05 is limited to expending its resources to serve only county residents. It is true that the Mahoning County Board claimed in its answer to the amended complaint that it was without authority to educate the intervenors.[5] It is also true that in its motion for summary judgment the Mahoning County Board based its argument partly on its reading of R.C. 5126.05. What the Mahoning County Board ignores is the fact that it raised the issue as an *affirmative defense* to the *placement* of the students at the Leonard Kirtz School. The trial court correctly rejected it as a defense. As discussed above, the Mahoning County Board's defense that it cannot expend its resources on non-county residents is

---

5. The Mahoning County Board stated in its "first affirmative defense":

"11. For purposes of educational placement, the legal residences of students Dacia Kieger, William Russell Jones, Nena Edwards and Jennifer Jones are not within Mahoning County and not within any district or area for which the Mahoning County Board is authorized to provide educational services.

"12. Placement of the students named in Paragraph 11 at the Leonard Kirtz School is, therefore, inappropriate and contrary to federal and state law."

based on a selective reading of R.C. 5126.05 and completely ignores R.C. 3323.04. In rejecting this defense the trial court found that for purposes of school attendance the intervenors are residents of the Austintown Local School District and Mahoning County.

The Mahoning County Board also argues that this issue was properly before the court because Civ.R. 15(B) applies. Civ.R. 15(B) provides in relevant part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues."

In its motion for summary judgment, the Mahoning County Board did not argue that the Ohio Department should reimburse it for educating intervenors. Therefore, it cannot be said that this issue was tried by express or implied consent of the parties. The only entity the Mahoning County Board argued was responsible for educating intervenors is the local school districts in which the parents reside. These local school districts were not made parties to this action. The Mahoning County Board's reliance on Civ.R. 15(B) is also undermined by the clear language of the trial court in its decision when it observed that "[t]he question of liability for costs was not raised in the Complaint or Amended Complaint, and therefore is not addressed." Quite simply, the underlying action did not concern the liability for education funding and the Mahoning County Board did not expand the scope of the relief sought through assertion of a cross-claim or any other pleading.

### III

The trial court denied the Austintown Board's motion for summary judgment against the state defendants and granted the state defendants' motion for summary judgment on the issue of whether the state was obligated to establish an educational program on the grounds of YDC. The trial court based its ruling on the determination that "no controversy exists, that no IEP recommends [YDC] as the appropriate educational placement for any of these children, and that it has not been shown that there has been a refusal to accept a child at [YDC] for special educational services where determined to have been appropriate."

The court of appeals found merit in the Austintown Board's sole assignment of error and the sixth assignment of error of the Mahoning County Board,

both of which asserted that the trial court erred in ruling that the state was not obligated to establish educational programs at YDC.

The court of appeals held that "pursuant to R.C. 3323.091, [the Ohio Department] has the authority to establish an institution that would be capable to educate [intervenors] and that such institution would be financed by state funds." However, the court found the record insufficient "to indicate whether or not [YDC] could be adapted so that it could properly educate [intervenors] or whether [the Ohio Department] has other facilities that are capable to educate such children."

R.C. 3323.091 provides:

"(A) The department of mental health, *the department of mental retardation and developmental disabilities,* the department of youth services, the department of rehabilitation and correction, and the board of trustees of the Ohio veterans' children's home *shall establish and maintain special education programs for handicapped children in institutions under their jurisdiction according to standards adopted by the state board of education.* * * * " (Emphasis added.)

The State Board of Education has adopted Ohio Adm.Code 3301–55–01(B), which concerns the responsibilities of state developmental centers and hospitals. That section commands that such facilities "shall provide a special education program ('program') for eligible pupils *placed in such programs pursuant to rule 3301–51–02* of the Administrative Code, which sets forth the procedural safeguards for special education programs." (Emphasis added.) Ohio Adm.Code 3301–51–02(E)(1)(d)(iv) and 3301–51–02(E)(4)(g)(ii), in turn, provide that educational placement is a function of an IEP, which requires placement in the least restrictive environment for education. Accordingly, R.C. 3323.091 requires the Ohio Department to establish and maintain special education programs only when an IEP recommends that one of its developmental centers is the least restrictive environment for education.

The Attorney General recently construed the Ohio Department's obligation to educate residents of developmental centers: "Admission to a state developmental center does not, in itself, constitute a determination that the child should be educated only in the programs established and maintained by the developmental center. Rather, the appropriate board of education is required to consider each child and to place the child in an appropriate educational program. * * *

" * * *

"In accordance with 3 Ohio Admin.Code Chapter 3301–55, I read R.C. 3323.091 as requiring that special education programs established and main-

tained in a state developmental center must comply with standards adopted by the State Board of Education. I do not find that R.C. 3323.091 mandates that children who reside at a state developmental center must receive their special education at the developmental center: such an interpretation would violate the requirement that each handicapped child be educated in the least restrictive environment." 1991 Ohio Atty.Gen.Ops. No. 91–024, at 2–125 to 2–126 and 2–128.

We agree. Therefore we hold that in the absence of an IEP requiring that educational services be provided in a particular developmental center, the Ohio Department is not obligated under R.C. 3323.091 to establish and maintain educational programs for students with disabilities residing in the center. As intervenors point out, to hold otherwise could deny a student the benefit of an appropriate placement in the least restrictive environment based on an IEP.

The IEP teams for the intervenors concluded that the Leonard Kirtz School was the least restrictive environment in which the intervenors could be educated. The IEP teams did not conclude that YDC was the appropriate placement. Therefore, whether YDC could develop educational programs for the intervenors is not the relevant question. The relevant question is whether an IEP recommends placement at YDC. Because no IEP contains such a recommendation, YDC is not obligated at the present time to establish educational programs.

For the reasons stated above, the judgment of the court of appeals is reversed and the trial court's judgment is reinstated.

*Judgment reversed.*

Moyer, C.J., A.W. Sweeney, Resnick, F.E. Sweeney and Pfeifer, JJ., concur. Douglas, J., concurs in judgment only.