[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 584.]

THE STATE EX REL. MASSIE *v*. BOARD OF EDUCATION OF GAHANNA-JEFFERSON PUBLIC SCHOOLS ET AL.

[Cite as *State ex rel. Massie v. Gahanna-Jefferson Pub. Schools Bd. of Edn.*, 1996-Ohio-47.]

*Schools—Mandamus to compel board of education and superintendent of schools to issue grades and credits to students with unpaid instructional fees— Writ denied, when.*

(No. 96-276—Submitted July 24, 1996—Decided October 2, 1996.)

IN MANDAMUS.

———————————

{¶ 1} Due to a projected deficit following the defeat of school operating levies, respondent Jack J. Schmidt, Superintendent of Gahanna-Jefferson Public Schools, proposed that respondent Board of Education of Gahanna-Jefferson Public Schools impose a student instructional fee. On August 10, 1995, the board adopted Schmidt's proposal and established a student instructional fee of twenty dollars per student in kindergarten, thirty-five dollars per student in grades one through five, forty dollars per student in grades six through eight, and forty-five dollars per student in grades nine through twelve. The instructional fee is assessed up to a maximum of three children per family and is waived for students in serious financial need. The instructional fee is in addition to certain class-specific fees at the high school level.

{¶ 2} The instructional fees have been used by the board to purchase materials used in courses of instruction. The fees have not been used to purchase administrative materials or necessary textbooks. Included in the materials purchased by the board with the instructional fees are workbooks, notebooks, clipboards, maps, pencils, and copy paper used to reproduce learning aids,

workbooks, and assignments. In a letter dated September 13, 1995, Superintendent Schmidt advised parents of Gahanna-Jefferson students that "[t]he money collected from the students will be used to buy workbooks and other materials used within the classroom."

{¶ 3} Relator, John Massie, has three children, William, Samuel, and Jessica, who are students in Gahanna-Jefferson Public Schools. The board has withheld grades and credits for Massie's children because he did not pay the applicable student instructional fees for the 1995-1996 school year. Massie paid $65 in class-specific charges for William's twelfth grade art classes. William had seven other classes in twelfth grade that did not have class-specific charges. Massie also purchased sewing materials for Jessica to use in a class in lieu of being provided the same materials by school officials. According to the Massie children, they have not been given any other materials for classes.

{¶ 4} Massie instituted this action for a writ of mandamus to compel the board and Schmidt to issue grades and credits to Massie's children. We granted an alternative writ and further granted Massie's motion to amend the complaint to indicate that this action is being brought in the name of the state on his relation. 75 Ohio St.3d 1424, 662 N.E.2d 26; see, also, R.C. 2731.04; *State ex rel. Huntington Ins. Agency, Inc. v. Duryee* (1995), 73 Ohio St.3d 530, 533, 653 N.E.2d 349, 353. After the parties filed evidence and Massie filed his merit brief, respondents failed to file a brief. Instead, respondents filed motions to dismiss the amended complaint and vacate the alternative writ as to the claim relating to William's grades and credits. Massie filed a memorandum opposing the motions, which contained affidavits of both Massie and William. Respondents then moved to strike these affidavits.

{¶ 5} The cause is now before this court on the merits as well as on respondents' motions.

———————————

*Alden & Associates Co., L.P.A.*, *Matthew L. Alden* and *Erick R. Alden*, for relator.

*Scott, Scriven & Wahoff*, *Julie C. Martin* and *Gregory B. Scott*, for respondents.

---

**Per Curiam.**

*Motions to Dismiss, Vacate, and Strike*

{¶ 6} As a preliminary matter, respondents request that we dismiss the complaint and vacate the alternative writ as to Massie's claim relating to his son William's grades and credits. Civ.R. 17(A) requires that "[e]very action shall be prosecuted in the name of the real party in interest." A real party in interest is directly benefited or injured by the outcome of the case rather than merely having an interest in the action itself. *State ex rel. Botkins v. Laws* (1994), 69 Ohio St.3d 383, 387, 632 N.E.2d 897, 902.

{¶ 7} Respondents assert that Massie is not a real party in interest as to William's grades and credits because his statutory duty to support William ceased when William became eighteen. The evidence presented established that William is an eighteen-year-old high school student. Respondents rely on R.C. 2151.03, which defines "neglected child," and R.C. 2151.011(B)(1)(a), which defines "child." Respondents' reliance is misplaced. The applicable provision is R.C. 3103.03(B), which provides that "the parental duty of support to children, including the duty of a parent to pay support pursuant to a child support order, shall continue beyond the age of majority as long as the child continuously attends on a full-time basis any recognized and accredited high school." Therefore, the fact that William had reached eighteen was not dispositive. The evidence presented pursuant to the alternative writ indicated that William was still attending high school on a full-time basis. Massie possessed a duty under R.C. 3103.03(B) to support William. Furthermore, the evidence established that William's grades are being withheld due

to Massie's failure to pay his student instructional fee. Based on the foregoing, Massie is a real party in interest on his claim for the issuance of William's grades and credits. We overrule respondents' motions to dismiss and vacate. Since we need not consider the affidavits attached to Massie's memorandum in opposition to the motion in deciding the motion, respondents' motion to strike these affidavits is moot.

*Mandamus; R.C. 3313.642*

{¶ 8} In his first proposition of law, Massie contends that a board of education cannot impose a fee for instruction or for consumable materials as part of a deficit reduction plan. Massie did not pay the student instructional fees for his three children because he believed that his children were entitled to a free public education.

{¶ 9} The General Assembly "shall make such provisions, by taxation, or otherwise, as, with the income arising from the school trust fund, will secure a thorough and efficient system of common schools throughout the State." Section 2, Article VI, Ohio Constitution. R.C. 3313.48 provides that "[t]he board of education of each city, exempted village, local, and joint vocational school district shall provide for the free education of the youth of school age within the district under its jurisdiction ***." See, also, R.C. 3313.64.

{¶ 10} However, R.C. 3313.642 provides:

"*Notwithstanding the provisions of sections 3313.48 and 3313.64 of the Revised Code, the board of education of a* city, exempted village, or *local school district shall not be required to furnish, free of charge, to the pupils attending the public schools any materials used in a course of instruction* with the exception of the necessary textbooks required to be furnished without charge pursuant to section 3329.06 of the Revised Code. The board may, however, make provision by appropriations transferred from the general fund of the district or otherwise for

furnishing free of charge any materials used in a course of instruction to such pupils as it determines are in serious need of such materials. ***" (Emphasis added.)

{¶ 11} Unlike tuition, which pays the costs of instruction or teaching, student fees charged by many educational institutions typically pay the costs of items actually used by students, such as textbooks and supplies. See, generally, 1 Rapp, Education Law (1996) 5-115, Section 5.04[1]. According to Massie, R.C. 3313.642 does not authorize the student instructional fees charged by respondents. "'In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *** In determining legislative intent, the court first looks to the language in the statute and the purpose to be accomplished.'" *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 220, 631 N.E.2d 150, 153, quoting *State v. S.R.* (1992), 63 Ohio St.3d 590, 594-595, 589 N.E.2d 1319, 1323. Words used in a statute must be taken in their usual, normal or customary meaning. R.C. 1.42; *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486, 489.

{¶ 12} "Materials" are tools or articles needed to make or do something. Webster's Third New International Dictionary (1986) 1392. "Instruction" refers to teaching. *Id.* at 1172. Therefore, R.C. 3313.642 authorizes boards of education to charge fees for all articles used in courses where students are taught, with the exception of necessary textbooks required to be furnished under R.C. 3329.06 to pupils attending public schools. The General Assembly enacted R.C. 3313.642 to "relieve the undue burden placed upon boards of education because of inability to charge for materials in the course of instruction." Am.S.B. No. 214, Section 2, 128 Ohio Laws 286, 287 (1959).

{¶ 13} In *Assn. for the Defense of the Washington Loc. School Dist. v. Kiger* (1989), 42 Ohio St.3d 116, 537 N.E.2d 1292, we granted a peremptory writ of mandamus to compel the Superintendent and the Board of Education of the

Washington Local School District to issue grades and credits of students which had been withheld for failure to pay a five-dollar-per-pupil fee. The superintendent had announced that the fees would "assist in providing paper products, copier materials, student record keeping/test supply sheets, work sheets, and other necessary consumable educational supply items which directly affect all students in their classrooms/buildings." *Id.*, 42 Ohio St.3d at 116-117, 537 N.E.2d at 1292. We noted that since free public education is the general rule in Ohio, the exception under R.C. 3313.642 should be strictly construed. *Id.*, 42 Ohio St.3d at 118, 537 N.E.2d at 1293. After strictly construing R.C. 3313.642, we determined that the student fees at issue were "for the costs of administrative materials, not classroom materials." *Id.*, 42 Ohio St.3d at 118, 537 N.E.2d at 1293. We noted that this conclusion was strengthened by language in the announcement that the fees were "in addition to other laboratory, workbook, and activity fees, etc., being assessed for science, industrial arts, art, weekly readers, etc." *Id.*, 42 Ohio St.3d at 118, 537 N.E.2d at 1293. Since the fees were not authorized by R.C. 3313.642, the superintendent and board of education possessed a clear legal duty to issue grades and credits to the parents of students who had not paid the fees. *Id.*, 42 Ohio St.3d at 118, 537 N.E.2d at 1293-1294.

{¶ 14} Massie claims that based on *Kiger*, respondents' fees here are not authorized by R.C. 3313.642 because all consumable supplies constitute administrative rather than classroom materials. Massie misreads *Kiger*. *Kiger* did not hold that consumable supplies can never constitute materials used in courses of instruction under R.C. 3313.642. While the fees in *Kiger* were referred to by the respondents therein as "consumable educational supply items which directly affect all students," there was no indication that these materials were actually used in classrooms during courses. In fact, "student record keeping" sheets indicated administrative rather than classroom materials in *Kiger*.

6

**{¶ 15}** Conversely, the record in this case establishes that the instructional fees assessed by respondents have been used to purchase classroom materials, *i.e.*, materials used in courses of instruction. Similarly, although like *Kiger*, the challenged fees are being charged in addition to certain class-specific fees, this does not mandate a finding that these instructional fees are also for administrative, rather than classroom, materials.

**{¶ 16}** The term "administrative" "pertains to administration, especially management, as by managing or conducting, directing, or superintending, the execution, application or conduct of persons or things" and particularly has the characteristics of "executive or ministerial action." Black's Law Dictionary (6 Ed.1990) 45. The evidence indicates that the instructional fees established by respondents are for classroom materials instead of administrative materials. The treasurer of the school district stated that the fees generated less income than the expenses he posted to categories of the State Auditor designated under the Uniform School Accounting System as covering "instructional supplies" or "teaching aids." These are defined respectively as "[e]xpenditures for consumable non-food instructional supplies used in classroom, such as paper, paste, pencils, [and] paint" and "[e]xpenditures for items and supplies used by teachers to aid in their instruction of the student, for example, flash cards, geographical maps, and so forth." These accounting classifications comport with the conclusion that the challenged fees are assessed to cover the cost of classroom materials, as authorized by R.C. 3313.642.

**{¶ 17}** While Massie emphasizes that the court must narrowly construe R.C. 3313.642, courts do not have the authority to ignore the plain language of a statute under the guise of statutory interpretation or liberal or narrow construction. See, *e.g., Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 347, 626 N.E.2d 939, 942. The plain language of R.C. 3313.642 permits the instructional fees established by respondents because they are being used for classroom

materials. Therefore, Massie is not entitled to a writ of mandamus based on *Kiger* and the applicable statutes. His first proposition of law is meritless and is overruled.

*Constitutionality of R.C. 3313.642*

{¶ 18} In his second proposition of law, Massie asserts that even if the fees are authorized by R.C. 3313.642, he is entitled to extraordinary relief in mandamus to compel issuance of the withheld grades and credits of his children because R.C. 3313.642 is unconstitutional. Massie claims that R.C. 3313.642 violates due process because it penalizes children (by withholding grades and credits) for the actions of their parents (failure to pay fees for materials used in a course of instruction).

{¶ 19} Massie did not raise this constitutional claim in his complaint or motion to amend the complaint. The alternative writ was issued on a pleading which did not include this claim. Evidence was presented by respondents without notice that this claim was being raised. Massie has not sought leave to amend his complaint to raise this claim. Finally, respondents have not expressly or impliedly consented to trial of this issue. Civ.R. 15(B). Therefore, we need not consider the merits of this improperly raised claim. See, *e.g., Austintown Loc. School Dist. Bd. of Edn. v. Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities* (1993), 66 Ohio St.3d 355, 364-365, 613 N.E.2d 167, 174-175; *State ex rel. Evans v. Bainbridge Twp. Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159, syllabus.

*Conclusion*

{¶ 20} Accordingly, in that Massie has failed to establish either a clear legal right to the withheld grades and credits of his children or a corresponding clear legal duty on the part of respondents to issue them, he is not entitled to the requested extraordinary relief in mandamus. The writ is denied.

*Writ denied.*

8

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

---