OPINION
{¶ 1} Appellants, Warren and Tammy Stancourt ("the Stancourts"), appeal from a judgment of the Franklin County Court of Common Pleas dismissing their administrative appeal under R.C. 3323.05, and remanding the matter to the State Board of Education for further proceedings. For the following reasons, we affirm. *Page 2 
 {¶ 2} This matter arises out of a purported violation of the Individuals with Disabilities Education Act ("IDEA"), Section 1400 et seq., Title 20, U.S. Code by appellee, Worthington City School District Board of Education ("appellee"). The IDEA provides federal funding to assist state and local educational agencies in educating individuals with disabilities. Austintown Local School Dist. Bd. of Edn. v. MahoningCty. Bd. of Mental Retardation Dev. Disabilities (1993),66 Ohio St.3d 355, 360. As required to qualify for federal assistance, Ohio has enacted policies and procedures through R.C. Chapter 3323 that are consistent with the IDEA. Id. That chapter incorporates the purpose of the IDEA, i.e., "to provide handicapped children a free, appropriate public education tailored to the unique needs of each child by developing an IEP [individualized education program] which places the child in the least restrictive environment." Id. at 360, citing R.C. 3323.01(D) and (E), 3323.02, 3323.08(C) and Ohio Adm. Code 301-51-02(E)(1)(d)(iv). The State Board of Education has promulgated rules for the education of handicapped children under authority granted in R.C. 3323.03 and 3323.04. Id. See, generally, Ohio Adm. Code 301-51.
 {¶ 3} Having exhaustively detailed the facts underlying the parties' dispute in Stancourt v. Worthington City School Dist. Bd. of Edn.,164 Ohio App.3d 184, 2005-Ohio-5702, we reiterate only those facts and procedural events relevant to this appeal.
 {¶ 4} In January 2002, an IEP was created to address the educational needs of the Stancourts' son, Gregory, who was a fifth-grade student in the Worthington City School District. The Stancourts and appellee agreed to the January 2002 IEP, which established the following Annual Goals:
 1.0 Gregory will read and write material at the fifth grade level. *Page 3 
 2.0 Gregory will calculate and solve grade level math problems using addition, subtraction, multiplication and division.
 3.0 Gregory will remain on task during assigned work times.
 4.0 Gregory will follow the general rules expected of all students regarding his physical behavior based upon each environment[']s specific rules.
With respect to each Annual Goal, the IEP identified several objectives.
 {¶ 5} The January 2002 IEP also contained a behavior plan. The behavior plan identified five targeted behaviors, mirroring objectives listed under Annual Goals 3.0 and 4.0, as follow:
 1. complete and turn in assignments within the allotted time
 2. will not touch others by keeping his hands feet to himself
 3. work will be completed neatly (legibly and without doodling)
 4. increased duration of time on task
 5. work without vocalizations[.]
The behavior plan established a point system, under which Gregory earned one point for each targeted behavior he demonstrated during each of eight instructional periods per school day. The behavior plan also provided for response costs, including loss of points or time-out periods, should Gregory not demonstrate a targeted behavior. Gregory earned identified privileges or rewards upon earning a specified percentage of the total available points in a week. Initially, Gregory earned a privilege or reward if he earned 60 percent of the available points in a week. After Gregory earned 60 percent of the available points for two consecutive weeks, the percentage of points required to *Page 4 
earn a privilege or reward increased to 70 percent. Once Gregory earned 70 percent of the available points for two consecutive weeks, the percentage of points required to earn a privilege or reward increased to 80 percent. The behavior plan also required that "Gregory will be verbally or nonverbally reinforced by the teacher (approximately every 5-10 minutes) until he achieves the identified target percentage of points * * * for a week. When he achieves the identified target percentage for a week, he will then be verbally reinforced intermittently * * * for the remaining weeks." The behavior plan provided that, if Gregory earned 80 percent of the available points for two consecutive weeks, the targeted behaviors would be considered mastered, and "the IEP team will be reconvened to discuss fading of reinforcers."
 {¶ 6} During the remainder of the 2001-2002 school year, three addenda were added to Gregory's IEP. The Stancourts agreed with the first two addenda, but did not agree with the third, dated April 10, 2002. The parties' dispute revolves around the April 10, 2002 addendum, which called for thinning the reinforcers described in the behavior plan by gradually reducing the number of points available to Gregory, reducing the frequency of reinforcers for performance of targeted behaviors, and eventually eliminating the behavior plan. The addendum expressly provided that, "[i]f Gregory does not maintain the target behaviors with intermittent reinforcement during the remainder of the year or during the first 4 weeks of school year 02-03, the behavior plan on the IEP dated 1/22/02 will be reinstated." Appellee proposed the April 10, 2002 addendum because Gregory had earned 80 percent of the total points available under the behavior plan for two consecutive weeks and had, therefore, mastered the targeted behaviors. School officials met with the Stancourts and presented them with the *Page 5 
addendum on April 10, 2002, but the Stancourts refused to sign it, instead requesting additional time to read, consider, and discuss it with Gregory's psychologist.
 {¶ 7} On Saturday, April 13, 2002, appellee issued a Written Notice to Parents, notifying the Stancourts that the April 10, 2002 addendum would take effect on Monday, April 15, 2002, and informing them of procedural safeguards available under the IDEA. The Stancourts claim that they received the written notice on April 17, 2002, two days after the effective date of the addendum.
 {¶ 8} On May 28, 2002, the Stancourts met with school officials to discuss Gregory's IEP for the 2002-2003 academic year. Although appellee presented the Stancourts with a proposed IEP, dated June 7, 2002, the Stancourts did not consent to that IEP, and it was not implemented.
 {¶ 9} On May 31, 2002, the Stancourts requested an impartial due process hearing regarding implementation of the April 10, 2002 addendum and the proposed 2002-2003 IEP, but they withdrew that request shortly thereafter. On August 26, 2002, the Stancourts renewed their request for an impartial due process hearing based on "the addendum, dated April 10, which [appellee] implemented without our consent or participation and the new IEP which has been drafted and which eliminates all reference to social skills needs. Also, the lack of a social skills goal and objectives in the current IEP." The Stancourts' request was referred to an impartial hearing officer ("IHO").
 {¶ 10} Under the IDEA, during the pendency of an impartial due process hearing or any subsequent appeal, a child must remain in his or her "then-current educational placement." Former Section 1415(j), Title 20, U.S. Code, Pub.L. No. 105-17, 111 Stat. 37, 93. See, also, former Section 300.514(a), Title 34, C.F.R., 64 F.R. 12406, 12452 *Page 6 
("[e]xcept as provided in § 300.526, during the pendency of any administrative or judicial proceeding regarding a complaint under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement"). Likewise, former Ohio Adm. Code 301-51-02(G)(6)(a), effective February 28, 1997, provided that, unless the parent and the school district agreed otherwise, a child was to remain in his or her current educational placement during the pendency of any impartial due process hearing or subsequent appeals. The IDEA's stay-put provision "is premised on the rationale that preservation of the status quo, rather than an inappropriate reaction to an emergent situation, provides for the best interests of the child," and it "guarantees consistency in a child's learning environment until a challenge to an existing placement or a new placement has successfully established whether a different alternative placement is necessary."Tenn. Dept. of Mental Health Mental Retardation v. Paul B. (C.A.6, 1996), 88 F.3d 1466, 1472.
 {¶ 11} On October 2, 2002, the IHO issued a decision regarding Gregory's stay-put placement. The IHO cited cases emphasizing the right of the child to "remain in his or her then current educationalplacement in the event of a due process request" and stated that, under the Ohio Administrative Code, "if a disputed IEP proposes to change program placement on the continuum of potential placements, then the last agreed-upon IEP is the `stay-put' placement, but if the dispute involves the provision of services only, then the disputed IEP can be the `stay-put' placement provided the school district has implemented the change pursuant to a PS-401 Prior Written Notice Form." (Emphasis sic.) Suggesting that the April 10, 2002 addendum did not change Gregory's *Page 7 
educational placement, the IHO found that Gregory's stay-put placement included all three addenda to the January 2002 IEP.
 {¶ 12} On February 13, 2003, the IHO dismissed the Stancourts' due process proceedings with prejudice based on the Stancourts' failure to comply with the IHO's order to release Gregory's medical and mental health treatment records to appellee. The Stancourts appealed to the State Board of Education, which appointed a state-level reviewing officer ("SLRO") to consider the appeal. In a final decision and entry mailed May 12, 2003, the SLRO amended the IHO's order to a dismissal without prejudice, subject to reopening if the Stancourts complied with the IHO's order to grant appellee access to Gregory's records. The SLRO did not address Gregory's stay-put placement.
 {¶ 13} The Stancourts appealed to the Franklin County Court of Common Pleas, which, on July 27, 2004, issued a judgment, reversing the IHO and SLRO dismissals, but affirming the IHO's determination that the April 10, 2002 addendum was part of Gregory's stay-put placement. The Stancourts appealed to this court and, in Stancourt, argued that the trial court erred in finding that the April 10, 2002 addendum was part of Gregory's stay-put placement. Stancourt also involved a cross-appeal by appellee from the trial court's determination that the SLRO lacked authority to dismiss the Stancourts' due process request based on their failure to comply with the IHO's discovery order.
 {¶ 14} In Stancourt, this court affirmed the trial court's judgment reversing the dismissals of the Stancourts' due process proceedings. However, we held that the trial court erred in finding that the April 10, 2002 addendum was part of Gregory's stay-put placement based on the court's failure to "make the requisite finding whether the change reflected in the addendum of April 10, 2002, implicated a detrimental change in *Page 8 
the elements of [Gregory's] IEP, or * * * fundamentally changed or eliminated a basic element of [Gregory's] IEP, thereby implicating the `stay put' provision of Section 1415(j), Title 20, U.S. Code."Stancourt at ¶ 68. Therefore, we remanded for the trial court to make that determination. We also directed the trial court to consider whether appellee deviated from the procedural requirements of the IDEA and, if so, whether the deviation resulted in substantive harm.
 {¶ 15} On remand, the trial court referred the matter for an evidentiary hearing before a magistrate, who considered expert testimony from William A. Lybarger, Ph.D., on behalf of the Stancourts, and Kevin Arnold, Ph.D., on behalf of appellee, documentary evidence submitted by both parties, the administrative record, and the arguments of counsel. The magistrate issued a decision on March 20, 2007, containing findings of fact and conclusions of law. The magistrate found that the April 10, 2002 addendum neither implicated a detrimental or fundamental change to Gregory's IEP nor eliminated a basic element of the IEP. Because the magistrate found that the addendum did not represent a fundamental change in Gregory's identification, evaluation or educational placement, he concluded that it did not implicate the stay-put provision of Section 1415, Title 20, U.S. Code and that the maintenance of Gregory's current educational placement would not prohibit the modifications set forth in the April 10, 2002 addendum. The magistrate further determined that any procedural violation of the IDEA based on the timing of notice to the Stancourts did not result in substantive harm and, thus, did not warrant further action. Over the Stancourts' objections, the trial court adopted the magistrate's decision on July 26, 2007, and entered final judgment, dismissing the Stancourts' appeal, on September 13, 2007. *Page 9 
 {¶ 16} The Stancourts filed a timely notice of appeal and here, in their second appeal to this court, they assert a single assignment of error:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT GREGORY STANCOURT WAS NOT HARMED BY THE ACTION OF WORTHINGTON CITY SCHOOLS.
Under their assignment of error, the Stancourts argue that the trial court erred in holding that Gregory did not suffer substantive harm as a result of appellee's unilateral implementation of the April 10, 2002 addendum to his IEP without prior notice to the Stancourts. They further assert that the trial court erred in holding that Gregory did not suffer harm because the only expert testimony on that issue was to the contrary. Lastly, the Stancourts maintain that the trial court should have excluded Dr. Arnold's testimony regarding opinions formulated during unauthorized evaluations and observations of Gregory.
 {¶ 17} As in Stancourt, we apply a hybrid standard of review. We review the trial court's findings of fact under a clearly erroneous standard, accepting those findings that are based upon some competent, credible evidence, but we review the trial court's conclusions of law de novo. Id. at ¶ 47, citing Knable v. Bexley City School Dist. (C.A.6, 2001), 238 F.3d 755, and Cremeans v. Fairland Local School Dist. Bd. ofEdn. (1993), 91 Ohio App.3d 668.
 {¶ 18} We first address the Stancourts' argument regarding the trial court's consideration of Dr. Arnold's testimony. Although the Stancourts' counsel initially objected to any testimony from Dr. Arnold based upon observations, testing, and events occurring after October 15, 2001, the date of Dr. Arnold's report, their argument in their appellate brief concerns only testimony regarding Dr. Arnold's involvement after *Page 10 
implementation of the January 2002 IEP. The Stancourts argue that the magistrate should have stricken Dr. Arnold's testimony because it was procured through unauthorized interactions, observations, and evaluations. Although the Stancourts undisputedly authorized Dr. Arnold to assist in the development and implementation of Gregory's IEP by conducting a consultative psychological evaluation of Gregory, they contend that Dr. Arnold's authority to observe, assess or examine their son terminated once the initial assessment was complete, and any further action was without their consent and in violation of Section 1414(c)(3), Title 20, U.S. Code. To the contrary, appellee maintains that the Stancourts repeatedly authorized Dr. Arnold to evaluate Gregory, that all of Dr. Arnold's actions were within such parental consent, and that the Stancourts, despite knowledge of Dr. Arnold's continuing evaluation of Gregory's educational program, never revoked their consent or otherwise objected to Dr. Arnold's involvement.
 {¶ 19} Generally, the admission or exclusion of evidence is within the trial court's broad discretion, and an appellate court will not reverse a trial court's decision to admit evidence absent an abuse of discretion. State ex rel. Sartini v. Yost, 96 Ohio St.3d 37,2002-Ohio-3317, ¶ 21. Here, the trial court rejected the Stancourts' arguments and considered Dr. Arnold's testimony in its entirety. In addition to stating that Section 1414, Title 20, U.S. Code "does not address any continuing evaluation or the effect of a lack of consent on materials reviewed for litigation," the magistrate noted that Dr. Arnold would be entitled to review and evaluate any materials and records examined and relied upon by the Stancourts' expert, Dr. Lybarger. Further, the magistrate found that, despite knowledge of Dr. Arnold's continuing involvement regarding Gregory's IEP, the *Page 11 
Stancourts did not object to Dr. Arnold's participation. Given that the vast majority of Dr. Arnold's testimony was based on his authorized evaluation of Gregory, his October 15, 2001 report, his involvement in the development of the January 2002 IEP, or on documents reviewed by Dr. Lybarger, coupled with the fact that the Stancourts did not object to Dr. Arnold's continued involvement in the IEP process, we find that the trial court did not abuse its discretion in considering Dr. Arnold's testimony in its entirety.
 {¶ 20} We now turn to the Stancourts' substantive arguments. Although the Stancourts frame their assignment of error in terms of harm to Gregory, they also argue that the change reflected in the April 10, 2002 addendum fundamentally changed or eliminated a basic element of Gregory's IEP, thereby implicating the stay-put provision of the IDEA. Appellee, on the other hand, argues that competent, credible evidence supports the trial court's findings, upon which the court concluded that the April 10, 2002 addendum did not implicate the stay-put provision. Because of its primary importance to this appeal, we address the issue of whether the April 10, 2002 addendum constituted a change in Gregory's educational placement before addressing the Stancourts' specific arguments regarding harm.
 {¶ 21} The stay-put provision requires that a student must remain in his or her current educational placement during the pendency of an impartial due process hearing and subsequent appeals unless the school and the student's parents agree otherwise. See former Section 1415(j), Title 20, U.S. Code; Former Ohio Adm. Code Section 3301-51-02(G)(6)(a). The United States Supreme Court has noted that the purpose of the stay-put provision is "to strip schools of the unilateral authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from *Page 12 
school" (emphasis sic), Honig v. Doe (1988), 484 U.S. 305, 323, and "to prevent school officials from removing a child from the regular publicschool classroom over the parents' objection pending completion of the review proceedings." (Emphasis added.) School Commt. of Town ofBurlington, Mass. v. Dept. of Edn. (1985), 471 U.S. 359, 373. "Congress was concerned about the apparently widespread practice of relegating handicapped children to private institutions or warehousing them in special classes." Id.
 {¶ 22} Given the purpose of the stay-put rule to protect children from unilateral displacement by school authorities, situations in which courts have found changes in educational placement, implicating the stay-put rule, include the following: expulsions for indefinite periods of time, Honig; graduation, Cronin v. Bd. of Edn. of E. Ramapo Cent.School Dist. (S.D.N.Y. 1988), 689 F.Supp. 197; removal of a student from a classroom to home-based tutoring, Lamont X v. Quisenberry (S.D.Ohio, 1984), 606 F.Supp. 809; transfer of students from a residential facility to a "mainstream" program some 200 miles away, Brimmer v. Traverse CityArea Pub. Schools (W.D.Mich. 1994), 872 F.Supp. 447; transfer of students from a 12-month day treatment program to a 180-day alternative school program, Tilton by Richards v. Jefferson Cty. Bd. of Edn. (C.A.6, 1983), 705 F.2d 800, 804.
 {¶ 23} Unlike cases involving a change to the type of educational program afforded a student, this case falls within the class of cases invoking application of the stay-put rule for adjustments to special educational services provided to an individual student.Stancourt at ¶ 50. While the stay-put requirement is implicated only by modifications to a student's educational placement, not every change to a student's IEP constitutes a change in educational placement. SeeCavanagh v. Grasmick *Page 13 
(D.Md. 1999), 75 F.Supp.2d 446, 466 ("[i]f * * * [the modifications to the student's IEP] * * * did not affect the educational placement of the child, then the * * * `stay-put' provision is inapplicable"). The focus should be on the importance of the particular modification and whether it is likely to significantly affect the child's learning experience.DeLeon v. Susquehanna Community School Dist. (C.A.3, 1984),747 F.2d 149, 153.
 {¶ 24} Neither the IDEA nor the implementing regulations define "educational placement" or "change in placement." While federal courts have frequently been called upon to determine whether a modification to a student's educational program constitutes a "change in placement" implicating the stay-put requirement, judicial construction has not provided a definitive meaning of "educational placement." Rather, in various contexts, courts have defined "educational placement" as referring to "anything from `the physical school attended by a child [to] the abstract goals of a child's IEP.'" AW ex rel. Wilson v. FairfaxCty. School Bd. (C.A.4, 2004), 372 F.3d 674, 679, quoting Bd. of Edn. v.III. State Bd. of Edn. (C.A.7, 1996), 103 F.3d 545, 548-549 (collecting cases). Whether a modification to a student's IEP constitutes a change in placement, triggering procedural protections under the IDEA, is necessarily a fact-specific inquiry. Brimmer at 452, citingDeLeon at 153.
 {¶ 25} In Stancourt, citing cases holding that a student's educational placement is not changed unless there has been a fundamental change in, or elimination of, a basic element of the student's educational program, we essentially remanded this matter for a determination of whether the April 10, 2002 addendum constituted a change to Gregory's educational placement. See Sherri A.D. v. Kirby (C.A.5, 1992), 975 F.2d 193, 206;Cavanagh at 467-468. Although this court also quoted the Sixth Circuit's *Page 14 
statement in Paul B., at 1474, that "one must identify a detrimental change in the elements of an educational program in order for a chance to qualify for the `stay put' provision," that case neither eliminates the requirement of a change in educational placement to implicate the stay-put provision nor alters the determination of whether a change in educational placement has occurred. Thus, this court stated, at ¶ 55, that, "for a chance to qualify for the `stay put' provision, the issue is reduced to whether the addendum of April 10, 2002, constituted a fundamental change in, or elimination of, a basic element of [Gregory's] educational program."
 {¶ 26} On remand, the magistrate concluded that the alteration of behavioral reinforcement contemplated by the April 10, 2002 addendum was neither a fundamental change in nor an elimination of a basic element of Gregory's IEP and, therefore, did not reflect a change in Gregory's educational placement that would implicate the stay-put provision. In so concluding, the magistrate concurred with Dr. Arnold's expert testimony.
 {¶ 27} Appellee retained Dr. Arnold in 2001 to evaluate Gregory regarding his academic performance and behavioral issues and to consult on the development of Gregory's IEP. There is no dispute that the Stancourts consented to Dr. Arnold's initial evaluation of Gregory and his involvement in the formulation of Gregory's January 2002 IEP. Dr. Arnold issued his report on October 15, 2001, after which he met with the Stancourts and school officials to review his report and recommendations. Dr. Arnold recommended that Gregory's IEP include social and behavioral goals to affect behaviors that appeared to impact Gregory's ability to benefit from his educational program. In particular, Dr. Arnold recommended including in Gregory's IEP a behavior *Page 15 
plan, similar to that ultimately contained in the January 2002 IEP, as a means of implementing various aspects of the social and behavioral goals. Dr. Arnold's recommendation called for a plan that would, initially, provide consistent reinforcers followed by a thinning of reinforcers to a variable schedule upon Gregory's mastery of the targeted behaviors. Dr. Arnold testified that, without a thinning component, the effectiveness of the plan would be lessened. The contemplation of thinning reinforcers is evident in the behavior plan attached to the January 2002 IEP, which provides that once Gregory mastered the targeted behaviors by earning 80 percent of available points for two consecutive weeks, "the IEP team will be reconvened to discuss fading of reinforcers." Dr. Arnold testified that the behavior plan was designed to permit reinstitution of reinforcers after thinning, if necessary for Gregory to maintain mastery of the targeted behaviors.
 {¶ 28} With respect to the primary issue before the trial court on remand, Dr. Arnold opined that the April 10, 2002 addendum did not represent a change to Gregory's IEP, but merely documented a set of specific procedures to implement the thinning component contemplated in the behavior plan. Specifically, Dr. Arnold testified, as follows:
 * * * [A]s far as did it change the behavior plan? No. It implemented the behavior plan. The behavior plan had in fact a component within it, as any good behavior plan would, for a reduction in the delivery of the rewards and other components of the program and eventually the cessation of the program when behaviors had been mastered and then maintained. To suggest that the behavior plan was changed by implementing that component is inconsistent with what in my opinion behavioral psychologists would consider to be a change in the plan. *Page 16 
(Nov. 16, 2006 Tr. 88-89.) Dr. Arnold noted that the April 10, 2002 addendum expressly provided for full reinstitution of the behavior plan if the targeted behaviors did not persist after the thinning and eventual cessation of reinforcers. Dr. Arnold also disagreed with Dr. Lybarger's opinion that Gregory was harmed by the removal of the behavior plan from his IEP, stating: "Based on the data that I collected and at the time of my involvement I would not have agreed with this statement." (Nov. 16, 2006 Tr. 99.)
 {¶ 29} The magistrate also considered the video deposition testimony of Dr. Lybarger, upon which the Stancourts rely in support of their assignment of error. Unlike Dr. Arnold, Dr. Lybarger had no direct contact with the Stancourts or Gregory, was not involved in the formulation of Gregory's IEP, and based his opinions solely on a review of records, including select school records and psychological reports. Dr. Lybarger opined that the change reflected in the April 10, 2002 addendum constituted a detrimental change to, and fundamentally changed or eliminated a basic element of, Gregory's January 2002 IEP. Specifically, Dr. Lybarger opined that the behavior plan was a fundamental element of Gregory's IEP and that Gregory was harmed "`by the cumulative effect of academic and social failure created by the removal of the Behavioral Plan from his stay-put IEP.'" (Lybarger Depo. 19.)
 {¶ 30} The Stancourts argue that the trial court erred as a matter of law by finding that Gregory was not harmed by implementation of the April 10, 2002 addendum because Dr. Lybarger's testimony was the only evidence on that issue. We reject that argument. First, even had appellee not presented specific evidence contradicting Dr. Lybarger's opinion, the magistrate was not obligated to credit Dr. Lybarger's testimony on that issue. See State v. Waugh, Franklin App. No. 07AP-619,2008-Ohio-2289, *Page 17 
quoting Croft v. State Farm Mut. Auto. Ins. Co. (Jan. 8, 2002), Allen App. No. 1-01-72 (" `even where expert testimony is not directly controverted by the opposing party's evidence, the jury is not required to accept the testimony so long as the record contains objectively discernible reasons upon which the jury could rely to reject the expert's opinion testimony'"); Suato v. Nacht (Apr. 16, 1998), Cuyahoga App. No. 73118 ("[t]hat evidence is uncontroverted does not necessarily require the trier of fact to accept an argument advanced by a party"). Here, as the trier of fact, the magistrate was free to believe or disbelieve any witness, including an expert witness. Clemens v.Gilbert, Belmont App. No. 06 BE 57, 2007-Ohio-6072, ¶ 24. "`Once properly before the court, the expert's conclusions became a matter for the trier of fact.'" Id., quoting State v. Hartman, 93 Ohio St.3d 274,285, 2001-Ohio-1580.
 {¶ 31} Rather than accepting Dr. Lybarger's opinion, the magistrate concurred with Dr. Arnold's opinion that the tentative change in behavior reinforcement occasioned by the April 10, 2002 addendum was not a fundamental change, nor an elimination of a basic element, of Gregory's educational program. We discern no error in that determination. Dr. Lybarger admitted in his deposition that he had no knowledge of Gregory's behavior at the time the April 10, 2002 addendum was implemented. Rather, his knowledge of Gregory's behavior in 2002 was limited to what was described in the January 2002 IEP, prior to implementation of the behavior plan. Dr. Lybarger also mistakenly and repeatedly testified that the behavior plan attached to the January 2002 IEP was never implemented, although he also testified that his opinion would be the same whether the plan was implemented and then eliminated or was never implemented at all. *Page 18 
 {¶ 32} We further find no error in the magistrate's rejection of Dr. Lybarger's reliance on evidence of Gregory's performance in subsequent school years for purposes of determining Gregory's stay-put placement. Although Dr. Lybarger described documents purportedly evidencing academic and behavioral failure, those documents were dated May 2003 and later. In essence, then, Dr. Lybarger based his opinion that Gregory was harmed by implementation of the April 10, 2002 addendum on educational records created over a year after implementation of that addendum and over six months after the IHO made her determination of Gregory's stay-put placement. While perhaps relevant to the merits of the Stancourts' due process hearing, such evidence is not relevant to the determination of Gregory's stay-put placement.
 {¶ 33} As the magistrate aptly recognized, thinning of reinforcers was clearly contemplated under the original January 2002 IEP, and this thinning, coupled with a provision for reinstatement of consistent reinforcement should Gregory's mastery of the targeted behaviors lapse, did not rise to the level of a change in educational placement. The modifications to Gregory's educational program contemplated by the April 10, 2002 addendum did not change Gregory's placement on the continuum of alternative placements, did not alter Gregory's opportunities to participate in academic, non-academic or extra-curricular activities, and did not affect the extent of Gregory's education with non-disabled students. See Cavanagh. Nor did the April 10, 2002 addendum revise the goals or objectives set forth in Gregory's January 2002 IEP. We cannot say that the tentative change contemplated by the April 10, 2002 addendum would substantially or materially alter Gregory's educational program. Accordingly, we find no error in the trial court's conclusion that the April 10, 2002 addendum to Gregory's *Page 19 
IEP did not constitute a change in Gregory's educational placement and, therefore, did not implicate the stay-put provision.
 {¶ 34} We also find that the record contains competent, credible evidence upon which the trial court could have concluded that implementation of the April 10, 2002 addendum did not constitute a detrimental change to Gregory's IEP. Dr. Arnold not only testified that implementation of the April 10, 2002 addendum did not constitute a change to Gregory's IEP, but he also disagreed with Dr. Lybarger's opinion that thinning of reinforcers caused harm. Here, the records evidenced appellee's belief in April 2002 that Gregory had mastered the targeted behaviors listed in the behavior plan. Because of his lack of knowledge of Gregory's behavior from April 2002 through May 2003, Dr. Lybarger was unable to contest the reasonableness of appellee's belief that Gregory had mastered those targeted behaviors. Moreover, there is no evidence in the record that Gregory's mastery of the targeted behaviors lapsed during the thinning process. To the contrary, Dr. Arnold's testimony indicates that Gregory maintained mastery of the targeted behaviors, and that, as of November 2002, he was not inclined to reinstate the behavior plan. The trial court found that Gregory's educational records do not present evidence of any detrimental effect of the thinning of reinforcers in the year following implementation of the April 10, 2002 addendum. We find that the record contains competent, credible evidence in support of the magistrate's findings and find no error in the trial court's conclusion that the April 10, 2002 addendum did not reflect a detrimental change to Gregory's IEP.
 {¶ 35} Lastly, in Stancourt, we directed the trial court to determine whether appellee's notice to the Stancourts regarding implementation of the April 10, 2002 *Page 20 
addendum comported with the procedural requirements of the IDEA and, if not, to determine whether the deviation resulted in substantive harm. See Knable at 764 (only if a procedural violation of the IDEA has resulted in substantive harm, thereby constituting a denial of a free appropriate public education, may relief be granted); Dong v. Bd. ofEdn. of Rochester Community Schools (C.A.6, 1999), 197 F.3d 793, 801
("[w]hile we strictly review an IEP for procedural compliance, technical deviations do not render an IEP invalid"). On remand, the magistrate concluded that, even assuming a procedural violation of the IDEA based on the timing of appellee's notice to the Stancourts, no substantive harm resulted from that violation.
 {¶ 36} In Knable, the Sixth Circuit stated that substantive harm occurs when a procedural violation of the IDEA seriously infringes upon the parents' opportunity to participate in the IEP process. Here, we find that the Stancourts were not precluded from meaningful participation in the IEP process. The Stancourts participated in the creation of their son's IEP, including the behavior plan, which provided that, upon mastery of the targeted behaviors, the IEP team would meet to discuss thinning reinforcers as a necessary element of the behavior plan. The Stancourts met with school officials on April 10, 2002, and were presented with the April 10, 2002 addendum. Thus, the Stancourts were well aware of appellee's desire to proceed with thinning of reinforcers and, upon Gregory's successful maintenance of the targeted behaviors, cessation of the behavior plan. Despite receipt of appellee's written notice that the addendum had actually been implemented, and notice of the procedural safeguards available to them, two days after its effective date, the Stancourts waited nearly six weeks to request a due process hearing and then, almost immediately, *Page 21 
withdrew their initial request. Appellants did not renew their request for a due process hearing until August 2002. Despite their disagreement with the April 10, 2002 addendum, the Stancourts continued their participation in the IEP process when they met, albeit unsuccessfully, with school officials regarding an IEP for the 2002-2003 school year. The Stancourts were involved in each step of the development and implementation of Gregory's IEP. That they disagreed with implementation of the April 10, 2002 addendum does not equate to a finding of substantive harm.
 {¶ 37} In concluding that Gregory suffered no substantive harm as a result of the Stancourts' receipt of written notice two days after the effective date of the April 10, 2002 addendum, the magistrate looked to the language of the addendum itself, and its express safeguard against harm, in that if Gregory did not maintain mastery of the targeted behaviors, the original behavior plan would be reinstated. The magistrate stated: "If the individuals involved in the hands on regimen of [Gregory's] schooling determined that he had reached the stage to alter his behavioral reinforcement plan, and if it did not achieve its goals after four weeks, the prior plan would be reinstituted, the latitude to do so should rest with the school." (Magistrate Decision at 25.) The magistrate noted that Gregory showed a substantial degree of success during his sixth-grade year, after implementation of the April 10, 2002 addendum, and found that the evidence of his poor grades in several subjects during succeeding years did not adequately attribute those grades to the thinning of behavioral reinforcers. As such, we conclude that competent, credible evidence supports the magistrate's finding that, even had appellee violated the procedural requirements of the IDEA requiring prior notice, no substantive harm resulted from such a violation. *Page 22 
 {¶ 38} For the foregoing reasons, we overrule the Stancourts' assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 KLATT and SADLER, JJ., concur. *Page 1